318 So.2d 618 (1975)
W. L. TOWNSEND, Jr.
v.
CLEVE HEYL CHEVROLET-BUICK, INC., et al.
No. 12588.
Court of Appeal of Louisiana, Second Circuit.
September 3, 1975.
Lunn, Irion, Switzer, Johnson & Salley by Richard H. Switzer, Shreveport, for General Motors Corp.
*619 Donald G. Kelly, Natchitoches, for W. L. Townsend, Jr.
Cook, Clark, Egan, Yancey & King by Gordon E. Rountree, Shreveport, for Cleve Heyl Chevrolet-Buick, Inc.
Before BOLIN, PRICE, HALL, DENNIS and MARVIN, JJ.
MARVIN, Judge.
The Constitution provides in part that when a judgment of a district court is to be modified or reversed and one judge of the court of appeals dissents, the case "shall be reargued before a panel of at least five judges prior to rendition of judgment." La.Const. Art. V, § 8(B) (1974).
The original consideration of this appeal by a three-judge panel produced this result and the case was reargued before a five-judge panel.
The appeal is from an award of a judgment for damages and attorney fees against appellant, the manufacturer of an automobile purchased by plaintiff-appellee from a new car dealer. Sixteen days after plaintiff's purchase, and while he was driving about 60 miles per hour on a paved highway, the universal joint of the vehicle abruptly dislodged, striking the pavement and causing the accident which resulted in damage to the automobile and personal injury to plaintiff. A bolt connecting the control arm assembly stabilizing the left rear axle either failed or worked loose, causing the left rear axle and wheel to shift rearward. This shifting pulled the universal joint from its connection and caused it to fall or drop to the highway. The trial court, this court and the litigants, do not dispute these circumstances. The absence of a nut for the bolt, the nut for the bolt being or becoming loose or untightened, or the failure of the bolt or nut could have caused the bolt to become disconnected, according to opinion evidence below.

THE PLEADINGS
The plaintiff-purchaser sued the seller, the seller's liability insurer, and the manufacturer. Plaintiff contended applicability of the res ipsa loquitur doctrine to place on all defendants the burden of proving their respective freedom from negligence. In the alternative, plaintiff separately alleged specifications of negligence against the seller and against the manufacturer respectively, as the cause of itemized injuries (essentially muscle and soft tissue strains to the back, neck and shoulder area) and itemized damages, including pain and suffering, loss of earnings, and medical and related expenses. The itemized damages, as alleged by plaintiff, totalled $8,423.98.
Against all defendants in solido, plaintiff prayed for judgment for this amount which he had itemized as personal injury damages.
After plaintiff itemized the $8,423.98, he alleged defects in the automobile; the offer to return the automobile to the seller; his demand on the seller and seller's "failure" to refund the purchase price. Plaintiff alleged "expenses" connected with the purchase and preservation of the automobile totalling $3,991.77. In the next article of his petition, plaintiff sought a recission of the sale and return of the purchase price, "together with expenses, damages and a reasonable attorney's fees (sic)."
Against only the seller and its insurer in solido, plaintiff prayed for judgment for this amount, $3,991.77, and for attorney fees.
The seller's liability insurer in effect admitted coverage on the "tort phase" of the case, but contended that the policy would not cover the seller "for the various claims made . . . for recission of the sale on the basis of the alleged redhibitory vices and defects". Against the manufacturer the insurer asserted a third-party demand, alternatively contending it should have judgment over against the manufacturer because the manufacturer "created *620 the defect in said automobile, if there was one". The seller asserted the same third-party demand against the manufacturer and reconvened against plaintiff for the purchase price of the car, the check for which purchase plaintiff allegedly had issued a stop payment order to his bank.
Nine months before trial, a compromise judgment of dismissal was entered between plaintiff and seller wherein plaintiff's suit against the seller and the seller's reconventional demands against plaintiff were dismissed with prejudice. This judgment reserved all of plaintiff's rights against the seller's liability insurer and against the manufacturer.
The trial court rejected plaintiff's demands against the seller's liability insurer, finding "no negligence" on the part of the seller, and "no liability" on the seller's insurer. The trial court awarded judgment against the manufacturer for $2,611.24, which the court below itemized as $1,500.00 personal injury damage, $8.24 drug expense, $60.00 doctor's expense, $43.00 for storage of the automobile, and $1,000.00 attorney's fees.
Only the manufacturer appealed from the judgment of the trial court, contending that it should be relieved of liability because of the "superseding" or "intervening" act of the seller in failing to properly inspect the rear suspension before delivery of the car to the purchaser; that the plaintiff's action was relegated to a "tort" action and attorney's fees were not allowable, especially where not prayed for against the manufacturer; and that the personal injury award was "excessive and exorbitant".
Neither plaintiff nor the seller's liability insurer appealed from the judgment of the trial court rejecting the demands of the plaintiff against the insurer.

THE SELLER'S ALLEGED FAILURE TO PROPERLY INSPECT
This contention of the manufacturer derives from a check list furnished to its dealers by the manufacturer which the dealer is to use in preparing a car for delivery. Trial testimony shows that the seller complied with the check list and made a reasonable inspection before delivery. A similar contention was raised in Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972), where the Supreme Court held the liability of a manufacturer and its franchise dealer to be solidary against latent defects in a new automobile sold to a consumer. The court said the "intervention" of the dealer, which serves only as a conduit for marketing the automobile, would not mitigate the manufacturer's liability to the purchaser. Therefore, the contention of the manufacturer as to alleged "intervening" and "superseding" negligence of the seller is of no avail to relieve the manufacturer of the responsibility for the defect.

THE MANUFACTURER'S LIABILITY FOR DAMAGES AND ATTORNEY FEES
The new automobile had been driven only 1,600 miles and plaintiff negatived the automobile being abused or driven into or over objects or obstructions about the highway during the sixteen days that he owned it. The car functioned properly until the bolt in question either worked out or failed. The part of the automobile was defective either in assembly or in the way it was designed or made.
A manufacturer is presumed to know of defects in the thing it makes or assembles and under La.C.C., Art. 2545 "is answerable to the buyer in damages". See Spillers v. Montgomery Ward & Co., Inc. 294 So.2d 803 (La.1974), and Rey v. Cucia, 298 So.2d 840 (La.1974).
The factual circumstances proved below establish plaintiff's claim for damages against the manufacturer whether the basis for the award be the liability imposed under the above civil code article and jurisprudence or under the inference of negligence *621 as suggested by the lower court's reasons for judgment.
The trial court correctly observed that the disconnecting or failure of the bolt was "not a usual thing" and that the manufacturer failed in its responsibility to show it was not negligent in its assembly. In Rey, supra, the Supreme Court referred to Joyner v. Aetna Casualty & Surety, Co., 259 La. 660, 251 So.2d 166 (1971), establishing as a "similar principle" the inference that faulty workmanship or material caused the failure shortly after delivery of the thing. Joyner involved the failure of the fulcrum of a diving board causing injury three to four months after installation, which was characterized by the court as a "permanent installation". A bolt connecting the lower control arm extending from the frame to the rear axle of an automobile, as in this case, is no less a "permanent installation" and the principle recognized there should apply here. See also Weber v. Fidelity & Casualty Ins. Co., 259 La. 599, 250 So.2d 754 (1971).
La.C.C., Art. 2545 provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
This article was applied in Rey, supra, which was the authority for the award of attorney fees below. In that case, the buyer of a camper trailer sued both the manufacturer and the seller to recover the purchase price because of redhibitory defect. There was no contention there that the buyer did not allege and pray for attorney fees against both defendants.
Here, the manufacturer-appellant contends the award of attorney fees was error because the action against it was "simply a tort suit" and not in redhibition and because these elements of plaintiff's petition were prayed for only against the seller (and its insurer, we should add) and not against the manufacturer.
We are admonished by our Code of Civil Procedure that "no technical forms of pleading[s] are required" (Article 854) and that it is not necessary to plead the "theory of the case" and the once sacramental prayer for general and equitable relief. See Article 862 and Comment (b) thereunder. This latter article provides that except in cases of default, "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
Article 861 states:
"When items of special damage are claimed, they shall be specifically alleged."
Article 891 sets forth requirements of a petition in these words:
"The petition shall comply with Articles 853, 854, and 863, and, whenever applicable, with Articles 855 through 861. It shall set forth the name, surname, and domicile of the parties; shall contain a short, clear, and concise statement of the object of the demand and of the material facts upon which the cause of action is based; and shall conclude with a prayer for judgment for the relief sought. Relief may be prayed for in the alternative."
Except when pleading possessory and petitory actions, Article 892 provides alternative pleading of two or more causes of action.
In Loyacano v. Continental Insurance Company and Winn-Dixie, La. Inc., 283 So.2d 302 (La.App. 4th Cir., 1973), the court affirmed a personal injury award against a grocery and its insurer where the plaintiff broke her tooth on a bone fragment in ground meat purchased from the *622 store. The petition was couched only in terms of negligence but the award was made below for breach of warranty and upheld on appeal under both theories. In essence, Loyacano was against only one defendantthe liability of the grocery and its insurer being virtually synonymousand the factual circumstances alleged and proved therein were sufficient to entitle the plaintiff to personal injury damages, which was the relief prayed for. The court had no difficulty in awarding damages under either theory, even though the warranty theory was not alleged. In our opinion, Loyacano presented the typical situation for the application of Articles 854 and 862, and properly employed the Louisiana system of fact pleading.
In McGowan-Rigsby Supply, Inc. v. Charles Carter & Co., Inc., 268 So.2d 716 (La.App. 1st Cir., 1972) Carter, the prime contractor, asserted a third-party demand against its subcontractor, Big River, and it was stipulated below between Carter and Big River "that if attorney's fees were found to be due, the trial court would fix the amount thereof in such sum as it deemed reasonable". 268 So.2d 716, 721. The contract between the contractor and the subcontractor provided for attorney fees in certain circumstances. The court reversed to award judgment on the third party demand, but refused to award attorney's fees because the appellant, Carter, in his petition, did not claim or pray for attorney's fees under the contract provision. There the court said:
"It is significant that in appellants' third party demand filed in the McGowan action, no claim is made for attorney's fees and none prayed for. LSA-C.C.P. art. 861 expressly provides that when items of special damage are claimed, they `shall be specifically alleged.' We are mindful that LSA-C.C.P. art. 862 provides that a final judgment may grant a party such relief as he is entitled to notwithstanding his failure to demand it in his pleadings. Said Article is without application in this instance inasmuch as the redactor's notes thereto point out that its purpose is primarily to eliminate the `theory of the case doctrine' which previously existed in this state. Pursuant to Article 862, above, a type of relief which is prayed for may be granted on a legal theory or principle not specifically presented or urged by a litigant. This does not mean, however, that the courts can grant a type of relief for which a litigant has not prayed when the particular type of relief sought is one which must be specially alleged as required by Article 861, above. Under the circumstances, no recovery can be allowed appellants for attorney's fees in the action filed by McGowan." 268 So.2d 716, 721-722.
In Paxton v. Ballard, 289 So.2d 85 (La. 1974), these principles, certainly applicable here, were observed:
"The Louisiana Code of Civil Procedure, rejecting procedural technicalities, adopts the salutary rule of liberal construction of pleadings.
"Article 5051 provides:
"The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.'
"Article 865 specifically directs:
"Every pleading shall be so construed as to do substantial justice.'
"These statutory imperatives plainly require a rule of reason in the construction of pleadings, designed to achieve justice between the parties.
"As this Court held in Succession of Smith, 247 La. 921, 175 So.2d 269 (1965):
"Harsh rules of pleading are not favored in this state. Each pleading must be reasonably construed so as to afford the litigant his day in court, arrive *623 at the truth, and do substantial justice. . . .
"The characterization of a pleading by the litigant is not controlling. Pleadings are taken for what they really are, and not for what their authors designate them." 289 So.2d 85, 87.
In Paxton, supra, factual allegations of "sole negligence" were held sufficient compliance with La.C.C.P. Art. 1005 to plead the affirmative defense of "contributory negligence". The court held that the factual allegations of the answer gave "fair notice" to the plaintiff that her own negligence would be at issue.
In this Court's opinion, the requirements for pleading an affirmative defense are identical in intent to the requirements for pleading a special damage. Compare Article 861, related articles and comments with Article 1005, related articles and comments. The term "shall be specifically alleged" of Article 861 could easily be interchanged with the term "shall set forth affirmatively" of Article 1005.
Under Articles 1151 et seq., the Code of Civil Procedure contemplates the amendment of the pleading (either formally or tacitly) to provide for a situation where a litigant has intended to claim a special damage or an affirmative defense but has failed in the pleading to make this expressly clear. Article 1153 provides:
"When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." (Emphasis Supplied)
Article 1154 provides:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence." (Emphasis Supplied)
See also the Comments under these Articles.
The procedural machinery is available to accomplish the desired goals set forth in Paxton by the Supreme Courtafford the litigant his day in court, arrive at the truth, do substantial justice and give fair noticewithout prejudice or injury to any party litigant.
From the rationale of these procedural articles and decisions we derive this underlying principle: When the pleading in question is construed in its entirety and with all other matters occurring during trial which relate to the pleading, and it is more reasonable than not to conclude that the adverse party was given fair notice and was fairly informed of the pleading's intended substantive result and procedure by which this result was intended to be accomplished, the pleading will be held to be legally effective and to satisfy the requirements of the Code of Civil Procedure which are raised in objection to the pleading.
Applying this principle in this case, we find the "facts" on which plaintiff's claims for damages are based are well pleaded *624 and that the manufacturer was given fair notice and was fairly informed in this respect by the pleading in question. Against both the seller and the manufacturer, plaintiff prayed for judgment in solido for the amount he itemized as personal injury damages and related expenses. The rationale of Loyacano applies here to allow plaintiff to recover damages notwithstanding under what theory or label he styled his petition or claim.
On the other hand, plaintiff distinguished between the seller and the manufacturer as to recovery of the purchase price and attorney fees connected with recission of the sale. The factual basis was alleged, but plaintiff prayed for this relief against only the seller (and it's liability insurer). The "suit" of plaintiff against the seller and the reconventional "demands" of the seller against plaintiff were compromised and dismissed some nine months before trial. Moreover, our page by page review of the record, including the trial court's recitation into the record of stipulations made between counsel in a pre-trial conference, does not reveal that the manufacturer was informed or given notice in any manner during the trial that plaintiff sought attorney fees from the manufacturer.[1] As far as we are able to determine from the record, the question of attorney fees against the manufacturer was not raised until after the case was submitted to the trial court for decision. When we construe this petition in its entirety and with all other matters occurring during trial which relate to the petition (and there were none), we cannot conclude that it is more reasonable than not that the manufacturer was given fair notice and was fairly informed that plaintiff was seeking to recover attorney fees from the manufacturer.
The rationale of McGowan-Rigsby, supra, applies here. Attorney fees were held there to be special damages which must be specifically alleged.[2] The test of whether or not a thing is "specifically alleged" under Article 861 is the fair notice standard set forth by the Supreme Court in Paxton, supra, which we have discussed herein.
Rey v. Cuccia, supra, is inapposite because both the manufacturer and the seller were sued in solido for recovery of the purchase price of a trailer because of a redhibitory defect and there was no contention that the buyer did not pray for or specifically allege entitlement to attorney fees.
We reverse the trial court's allowance of attorney fees against the manufacturer under the circumstances presented.

QUANTUM
Plaintiff saw his local physician shortly after the accident and within ten days saw an orthopedic physician in a nearby city. Plaintiff's injuries were diagnosed as muscular and ligamentous strains of the back, neck and shoulder area. Analgesics, muscle relaxants and heat were prescribed and plaintiff was advised to refrain from activities which could produce further strain or irritation. The orthopedic, who saw plaintiff only once, did express the opinion that plaintiff would experience muscle soreness on a gradually diminishing basis for three or four weeks with eventual recovery without permanent disability. Plaintiff testified that his pain and soreness continued for approximately one year. We find no abuse of discretion or manifest error by the trial court in assessing damages against the defendant.
*625 For reasons assigned, the judgment appealed is amended to remove the amount awarded the plaintiff as attorney's fees, reducing the award by $1,000.00 to $1,611.24, and, as thus amended, it is affirmed.
Appellant is assessed with the cost of this appeal.
Amended and affirmed.
NOTES
[1] When the trial court recited at the beginning of the trial "what was discussed in the pre-trial conference . . ." the court stated that the seller's insurer "will file their insurance policy, with reference to the coverage, on the tort action". Record at p. 82.
[2] An earlier characterization of attorney fees as "liquidated damages" as distinguished from "penalties" was approved by the Supreme Court in Maloney v. Oak Builders, 256 La. 85, 235 So.2d 386, 391 (1970).