363 So.2d 925 (1978)
Dan ALBRITTON, Plaintiff-Appellee,
v.
William R. McDONALD et al. d/b/a McDonald Quarter Horse Farm, Defendants-Appellants.
No. 13617.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1978.
Rehearing Denied, November 14, 1978.[*]
Writ Refused January 12, 1979.
*926 Goff, Goff & Levy by Robert W. Levy, Ruston, for Dan Albritton, plaintiff-appellee.
Baker, Culpepper & Brunson by Bobby L. Culpepper, Jonesboro, for William R. McDonald et al., d/b/a McDonald Quarter Horse Farm, defendants-appellants.
Before PRICE, MARVIN and JONES, JJ.
Rehearing En Banc. Denied, November 14, 1978.[*]
JONES, Justice.
Defendant seller of a quarter horse appeals from a judgment awarding damages to the plaintiff buyer arising out of the seller's intentional or negligent failure to inform the buyer that the quarter horse was infected with swamp fever. The buyer answers, contending that he should have been allowed his attorney fees and damages for mental anguish and for loss of anticipated profits. We amend to allow attorney fees and affirm.
Swamp fever is the popular name for equine infectious anemia, an incurable disease which seriously affects the worth of any horse. Opinion evidence in this case conflicts as to whether or not a horse with the chronic, least serious, form of swamp fever should be used even for breeding purposes employing artificial insemination.
The seller asserts three assignments of error, all of which are factual:
Was the horse (Mim's Lady) infected when sold?
Was the seller aware of the infection?
Did Mim's Lady infect two other horses which were pastured by the buyer for several weeks with the horse purchased from defendant?
The lower court found that the seller's veterinarian tested Mim's Lady (then known as King's Mim Mare) eight months before the sale to the buyer and that the veterinarian informed the seller of the positive test. The lower court also noted the veterinarian's testimony that he was requested by the seller to destroy the test results and not to attend the sale. The seller admitted that he had at least two conversations with the veterinarian about the positive test results.
When swamp fever symptoms appeared several weeks after the purchase of Mim's Lady, she and two horses with which she was pastured were tested positive by plaintiff's veterinarian. The lower court found that it was more probable than not that the other two horses were infected by Mim's Lady.
*927 The record supports the lower court's factual findings and we adopt them as detailed below and summarized here. Judgment below ($1,985) was for the amounts plaintiff paid for the three horses and included $750 as the cost of quarantining and treating the animals before their disposal. We find no abuse of discretion in the lower court's findings or award.

Appellee's Answer to Appeal
Plaintiff complains on appeal that the lower court should have allowed him additional damages for his business loss (reasonably anticipated breeding production) and for his personal mental anguish and anxiety arising from his concern for the health of his other horses. The lower court found proof of these elements of damage "too speculative" and declined to award any damages. While there is some evidence of plaintiff's anxiety, this is essentially a factual evaluation best made by the trier of fact and we find no abuse of discretion.
Plaintiff also complains on appeal that he should have been allowed attorney fees because the facts upon which plaintiff's recovery is based smack not only of tort, but redhibition as well. C.C. Art. 2545. Venue, or its absence, compounds this issue.
Defendant was domiciled in Jackson Parish. The sale occurred in Ouachita Parish. Plaintiff put the horse in his pasture in Union Parish where the damage was sustained and where plaintiff was domiciled. Plaintiff's original pleadings sufficiently alleged the factual basis and properly prayed for attorney fees.
After defendant filed several exceptions, the trial court ordered plaintiff to delete from his petition any reference to the remedy of redhibition. We denied plaintiff's application for supervisory writs. Docket No. 13,021, June 1, 1976.
Venue means the parish where an action may properly be brought. C.C.P. 41. The word action in the Code of Civil Procedure means the action which is or which may be instituted by a party as opposed to the party's right to institute the action. See Comments, particularly par. (a), under C.C.P. 421.
Defendant's intentional or unintentional failure to declare to plaintiff the vice which defendant knew existed in the horse at the time of the sale to plaintiff is the ground which gives plaintiff the right to institute the action. See Mitchell v. Bertolla, 340 So.2d 287, 291 (La.1976). Recovery could be allowed under either or both, the theory of tort (C.C. Art. 2315) and the theory of redhibition (C.C. Art. 2545), upon allegations and proof of sufficient facts. It is not necessary to plead a theory of recovery. Fact pleading alone is sufficient. Royal Furniture Co. of Baton Rouge v. Benton, 260 La. 527, 256 So.2d 614 (1972); Townsend v. Cleve Heyl Chevrolet-Buick, Inc., 318 So.2d 618 (La.App. 2d Cir. 1975).
The general rule of venue (where an action may properly be brought) in C.C.P. 42 is that an action against an individual shall be brought in the parish of his domicile. This general rule is subject to certain exceptions. C.C.P. 43. An action for an offense (intentional tort) or for a quasi-offense (unintentional tort) may be brought in the parish where the damages were sustained. C.C.P. 74. If there is a conflict between the venue provided by Art. 42 (defendant's domicile) and Art. 74 (parish where damage sustained), the plaintiff may bring the action in either parish having venue. C.C.P. 45.
In Smith v. Baton Rouge Bank & Trust Co., 286 So.2d 394 (La.App. 4th Cir. 1973), plaintiffs alleged certain facts and prayed for an injunction against execution of a judgment rendered in favor of the bank by the Orleans court and for a money judgment against the bank because the bank was unjustly enriched by the transaction between itself and plaintiff. The bank filed an exception of improper venue, contending it should have been sued at its parish domicile. The Orleans court had venue as to the injunctive relief but presumably would not have had venue as to the unjust enrichment relief. The Fourth Circuit properly noted that it was not presented with an improper cumulation of *928 unrelated actions where venue existed in one but not in the other and that its case was one in which the claim for unjust enrichment is based on the same factual allegations that serve as a basis for the injunction. 286 So.2d 396. Our situation is similar.
We agree with the holding in Smith that where a plaintiff has the right to institute an action on two or more claims arising out of one factual circumstance and that where venue is proper as to one claim, the disposition of which would affect the second claim as to which, if standing alone, venue might not be proper, the court has the venue of the action to decide both claims in the interest of efficient judicial administration, and the court therefore should overrule an exception to the venue.
Considering the mandate of C.C.P. 5051 that the rules of procedure implement substantive law and are to be liberally construed, we choose not to require a litigant in these circumstances to select a theory of his case which might deprive him of relief to which the substantive law entitles him. Comment (b), C.C.P. 862. See Castille v. Folck, 338 So.2d 328 (La.App. 3d Cir. 1976).
Whether in tort or in redhibition, plaintiff in these circumstances is entitled to damages. C.C. Arts. 2315, 2545. Attorney fees are allowable under 2545 and may be fixed by an appellate court. Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504 (La.App. 4th Cir. 1977).
This case was filed in February, 1976. The minutes reflect that hearings were held on various matters on six separate days. Trial on the merits occurred on two days. Considering also the numerous pleadings and the briefs on appeal and the amount of recovery, we consider that an award of attorney's fees of $2,000 will achieve substantial justice.
Judgment below is accordingly amended and
IT IS ORDERED AND ADJUDGED that there be judgment in favor of plaintiff for the additional amount of $2,000.00 as reasonable attorney fees.
As thus amended, judgment is AFFIRMED at the cost of appellants.
NOTES
[*] Price, J., dissents from refusal to grant rehearing on question of venue.