373 So.2d 777 (1979)
John Henry HARRIS et al., Plaintiff-Appellee,
v.
W. O. BARDWELL d/b/a Bardwell Marina et al., Defendants-Appellants.
No. 13876.
Court of Appeal of Louisiana, Second Circuit.
June 29, 1979.
Rehearing Denied July 30, 1979.[*]
*779 Lunn, Irion, Switzer, Johnson & Salley, Shreveport by S. Maurice Hicks, Jr. and Richard H. Switzer, Shreveport, for defendants-appellants Warrior Fiberglass Products, Inc. and Great Southwest Fire Ins. Co.
S. Patrick Phillips, Troy E. Bain, Bossier City, for plaintiff-appellee John H. Harris.
Gordon E. Rountree, Shreveport, for defendant-appellant W. O. Bardwell d/b/a Bardwell's Marina & Reliance Ins. Co.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied July 30, 1979.[*]
MARVIN, Judge.
Plaintiff was permanently injured when a pedestal-mounted seat in his fiberglass boat came loose in an abrupt turn and he was thrown into the water. More than one year after the sale of the boat but less than one year after the accident, plaintiff sued the manufacturer and the seller of the boat in redhibition, seeking damages and attorney fees, and in the alternative, in tort. Liability insurers of the respective defendants were also sued.
Defendants filed a peremptory exception of prescription to plaintiff's principal demands in redhibition, which were dismissed with prejudice in a judgment signed in 1976. Plaintiff did not appeal this judgment, but pursued his alternative demands in tort.
A jury trial in 1978 resulted in verdicts in favor of the seller of the boat and in favor of plaintiff and against the manufacturer and its products liability insurer for $175,000. Plaintiff and the defendant manufacturer and its insurer appeal the resulting judgment.
The manufacturer contends that it was not negligent in the manufacture or design of the boat seat or its installation, and that the jury verdict was grossly excessive in any event. Plaintiff contends that the 1976 judgment sustaining the peremptory exceptions of prescription and dismissing his demands in redhibition against both defendants was erroneous and that the 1978 judgment dismissing all his demands against the seller was erroneous. We amend to allow attorney fees and affirm.

FACTS
The accident occurred about five weeks after plaintiff purchased the boat. Plaintiff, with his daughter and her friend as passengers, was proceeding at an estimated 15-18 MPH on Lake Bistineau. When an insect struck plaintiff in the face he flinched and caused the boat to make an abrupt turn, at which time the screws securing the pedestal of his seat to the floor of the boat pulled loose. Plaintiff was thrown into the water and the propeller of the circling boat twice cut into his flesh and bone. After the boat struck a tree, the passengers gained control of the boat and rescued plaintiff.
The floor of the boat is constructed of ½" plywood covered with fiberglass. Below the floor is a 2" × 6" keelboard. The seat pedestal is attached to the floor with six sheetmetal screws 1½" in length. Proper installation of the pedestal requires that two of the six screws go through the plywood and into the 2" × 6" keel, while the remaining four screws simply go through the plywood. The manufacturer's plant manager at the time this boat was built *780 testified as to the proper installation. It was shown, however, that the six screws in the pedestal of plaintiff's boat went only through the ½" plywood floor. None of the screws went into the keelboard.
The jury apparently accepted the testimony of plaintiff's experts that this installation was unsafe or unreasonably dangerous and the testimony of the former plant manager of defendant that this installation (with none of the screws going into the 2" × 6" keel) was improper. We find no error. This defective installation triggers liability. Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971). CC Art. 2315, 2317, 2545.
The manufacturer's contention that the method of installation was the accepted and customary method in the industry loses validity when the resulting injury is found to be one which is reasonably foreseeable. Leathern v. Moore, 265 So.2d 270, 276 (La. App. 1st Cir. 1972). This boat was equipped with a 50 hp motor and was considered a high performance bass boat. Plaintiff's expert testified that his tests showed that the pedestal would come loose from the floor when the boat was going 15 MPH and was put into an 18 foot diameter turn or when the boat was going 18 MPH and was put into a 26 foot diameter turn. In either case, it is reasonably foreseeable that an occupant of the seat would be forcefully propelled from the seat if the screws pulled out of the pedestal base in such a high performance boat in an abrupt turn at 15-18 MPH.

THE SELLER'S LIABILITY
A seller who knows of defects, or who, with reasonable inspection can find obvious or apparent defects, in the product he sells, stands in a similar position as the manufacturer of the product. See CC Art. 2545, Hunt v. Ford Motor Co., 341 So.2d 614 (La.App. 2d Cir. 1977). The seller does not have to make minute inspection or disassemble the product to look for latent defects and, unlike the manufacturer, he is not presumed to know the latent defects in the product he sells. Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974).
The fact that none of the six screws in the pedestal base went into the keelboard was not detectable by simple inspection with the naked eye. See CC 2521, Walker v. Travelers Indemnity Company, 289 So.2d 864 (La.App. 4th Cir. 1974). The seller had been selling boats for more than 20 years and never before had experienced a pedestal failure. The defective installation of the seat was not obvious or detectable by simple inspection, but was latent. Under these circumstances, the verdict, in finding no liability on the part of the seller, and the judgment are correct.

THE 1976 JUDGMENT DISMISSING PLAINTIFF'S REDHIBITORY DEMANDS ON BASIS OF PRESCRIPTION
A suit brought against a manufacturer of a thing within one year of the discovery of a latent defect in the thing is timely. CC 2546, Rey v. Cuccia, 298 So.2d 840 (La.1974); Smith v. Max Thieme Chevrolet Company, Inc., 315 So.2d 82 (La.App. 2d Cir. 1975). The 1976 judgment dismissing plaintiff's claim in redhibition was clearly in error. On this appeal of the 1978 judgment on the merits, the manufacturer contends that we are powerless to allow CC 2545 damages and attorney fees because the 1976 judgment of dismissal was not appealed by plaintiff. Plaintiff contends that we should follow the reasoning of our recent rulings in support of judicial efficiency and against piecemeal appeals and hold that because the "action" was not dismissed, but only redhibitory claims of plaintiff, this judgment can now be reviewed. CCP 934; Walker v. Western-Southern Life Ins. Co., 361 So.2d 892 (La.App. 2d Cir. 1978); Givens v. Richland-Morris Agency, Inc., 369 So.2d 1184 (La.App. 2d Cir. 1979); Albritton v. McDonald, 363 So.2d 925 (La.App. 2d Cir. 1978). The law is not as clear as each litigant respectively contends and the problem is not addressed in the Code of Civil Procedure except in general and sometimes *781 confusing terms. See and compare Allen v. Anderson, 57 So.2d 50 (Orl.App.1952) and Beard v. Wilson Wholesale Distributors, Inc., 215 So.2d 664 (La.App. 1st Cir. 1968); Sewerage & Water Board of New Orleans v. Sanders, 246 So.2d 734 (La.App. 4th Cir. 1971).
Judgments of dismissal on exceptions are specially provided for in the articles dealing with exceptions. Comment (f), CCP 1672. We are told that a judgment of dismissal with prejudice otherwise than on an exception shall have the effect of a final judgment after trial. See CCP 1673 and comments following. We are not told the effect of a judgment of dismissal on an exception. CCP 934 simply provides if the grounds of the peremptory exception cannot be cured by amendment, the action shall be dismissed.
CCP 421 and its comments define action as the demand for the enforcement of a legal right (the action which is instituted by plaintiff) as distinguished from plaintiff's right to institute the action (Comment (a)) and even plaintiff's cause of action (CCP 424). This definition does not square with other CCP articles which speak of separate actions on different portions of an obligation (CCP 425) and the joinder of separate actions in the same judicial demand (CCP 461) even though based on different grounds,[1] and of inconsistent actions in the alternative (CCP 462).
A cumulation of actions (the joinder of separate actions in the same [one] judicial demand against the same defendant[s]) is permitted if venue and jurisdiction is proper and if the actions are mutually consistent and employ the same form of procedure, even though the actions are based on different grounds. CCP 461-462. The improper cumulation, however, is not grounds for a peremptory exception, but a dilatory exception. CCP 926. Even if cumulation is proper, the trial judge may require a separate trial of the actions if separate trials would either simplify the proceedings, permit more orderly disposition, or otherwise be in the interest of justice. CCP 465.
A true cumulation of actions exists, however, where a plaintiff against the same defendant pleads as grounds, two different factual circumstances, each of which might entitle him to certain relief. For instance, if in one suit A sues B on a promissory note and sues B for B's tort, the grounds are different and a true cumulation exists. If in one suit A sues B on one factual circumstance (as is the case here) and seeks recovery on two or more legal theories (tort, products liability, and redhibition), the grounds of the suit are not different, even though the theories of recovery are, and a true cumulation of actions does not exist.
Thus in our opinion then, and consistent with Walker, supra, the word action in CCP 934 is synonymous with the word action as it is used in the articles on cumulation of actions.
If in one lawsuit against the same defendant[s], the plaintiff alleges factually only one circumstance, and notwithstanding that plaintiff may allege two or more claims or theories of recovery arising out of the circumstance, the lawsuit embodies but one action. A dismissal of one claim or theory of recovery on an exception is not a final definitive judgment because resolution of the factual circumstance and relief under *782 other claims or theories of recovery are still pending. On the other hand, if the plaintiff joins two lawsuits in one, each supported by its own factual circumstance, a true cumulation has occurred. If the dilatory exception of improper cumulation is filed, the trial court shall proceed in accord with CCP 464. If the dilatory exception is not filed or is waived, the trial court still has the discretion of ordering separate trials of the lawsuits or actions, each with its own factual grounds. CCP 465. A dismissal of one of the joined lawsuits (or actions) on a peremptory exception becomes, as to that lawsuit, an appealable final judgment because the factual circumstance of that lawsuit (action) is in no way material or related to the other lawsuit. Resolution of that particular factual circumstance is made by the sustaining of the peremptory exception and nothing remains of that particular factual circumstance once the judgment of dismissal with prejudice on a peremptory exception becomes final and definitive. The Federal Rules of Civil Procedure suggest a similar analysis. FRCP 54(b).
There is but one factual circumstance or grounds for this lawsuit: the plaintiff's purchase of a boat with a defectively installed seat and the plaintiff's resulting injury. As against the seller and manufacturer, plaintiff has alleged several claims or theories of recovery (redhibition, tort, products liability), but the dismissal of one claim or theory of recovery on a peremptory exception is not a dismissal of the factual circumstances or the grounds for the lawsuit (the action under CCP 934). See Walker, supra, 361 So.2d at p. 894. We hold the 1976 judgment is subject to our review on this appeal of the 1978 judgment on the merits after jury trial. We reverse the judgment sustaining the exception and dismissing plaintiff's claims in redhibition.[2]

MANUFACTURER'S LIABILITY FOR PERSONAL INJURY DAMAGES AND ATTORNEY FEES
Having determined that the defective installation of the seat pedestal by the manufacturer triggers liability on the part of the manufacturer, we are faced with determining the extent and the basis for recovery. Plaintiff seeks recovery under theories of redhibition and, alternatively, in tort.
The manufacturer is presumed to know of the defects in the things he manufactures whether or not he has actual knowledge. The manufacturer is answerable to the buyer for the restitution of the price "... repayment of the expenses, including reasonable attorney's fees, ... [and] in damages." CC 2545. Smith v. Max Thieme Chevrolet Company, Inc., supra, citing Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972); Rey v. Cuccia, 298 So.2d 840 (La.1974).
This court en banc, indicating, but not squarely holding, that there is no difference in damages under CC Arts. 2315 and 2545, has held that an injured plaintiff may recover his personal injury damages from the manufacturer of a defective thing, caused by the thing, under either alleged theory of recovery (tort vs. redhibition). Townsend v. Cleve Heyl Chevrolet-Buick, Inc., 318 So.2d 618, 624 (La.App. 2d Cir. 1975). The issue of attorney fees under 2545 was not reached in Townsend, however, because the plaintiff failed to pray for them from the manufacturer, or to otherwise give fair notice to the manufacturer that he was claiming attorney fees.
In Albritton v. McDonald, 363 So.2d 925 (La.App. 2d Cir. 1978), where a seller knowingly sold a horse with a redhibitory vice, we affirmed a judgment ordering return of *783 the purchase price and for the buyer's cost of quarantining. We allowed attorney fees under 2545, noting, however, that recovery of damages "... could be allowed under either or both, the theory of tort ... and the theory of redhibition . . ." 363 So.2d at p. 927. The damages assessed there did not include personal injury damages.
As far as we are able to determine, no case arising out of the sale of a defective thing, not for human consumption, has discussed the combination of a demand for personal injury damages with a demand for attorney fees under CC Art. 2545. See Reeves v. Great Atlantic & Pacific Tea Company, 370 So.2d 202 (La.App. 3d Cir. 1979). See Professor David W. Robertson's article, 50 Tul.L.Rev. 50, at p. 109 (1975). His scholarly review of the development of the law, including CC Art. 2545, as amended, and the cases, including Weber and Media, concludes:
"As indicated above there seems to be nothing in Media itself or in the Code fabric upon which it rests that would prevent the award of personal injury `damages' under article 2545. Since article 2545 plainly provides for reasonable attorneys' fees, the combination is bound to be urged on the courts in the relatively near future. Given the potential magnitude of personal injury damages, the possibility of explicitly adding a separate increment for attorneys' fees is bound to stir up considerable furor." 50 Tul.L. Rev. at p. 109. Footnotes omitted.
While many cases have awarded attorney fees, no case has discussed the genesis of the 1968 amendment to CC 2545, its theory, or its advisability. Robertson, supra, at p. 108. Reeves, supra.
Attorney fees have not been characterized as penalties, but as damages, either special or liquidated. See Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386, 391 (1970); McGowan-Rigsby Sup., Inc. v. Charles Carter & Co., Inc., 268 So.2d 716 (La.App. 1st Cir. 1972), Townsend, supra. CC 2545 equates them with expenses.
Damages and expenses under 2545 have been held to include such things as inconvenience and "down time", Fox v. American Steel Building Company, Inc., 299 So.2d 364 (La.App. 3d Cir. 1974), and the cost of staying in a motel, Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App. 1st Cir. 1973). See also Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504, 506 (La. App. 4th Cir. 1977).
Under CC 2545 and the cases cited, the bad faith seller and the manufacturer are obligated or answerable to the buyer of a defective thing in damages. We have said the purposes of this article and related articles is to place the parties in the same position they were in prior to the sale insofar as that is possible. Smith v. Max Thieme Chevrolet, supra. This concept is in harmony with the obligation of the tortfeasor to repair or to make financial reparation for, the damage he causes. CC 2315. See Holland v. Gross, 195 So. 828 (La.App. 2d Cir. 1940).
Since George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905), where the manufacturer was also the seller, the manufacturer of a defective thing has been presumed to know of the defect, and in more recent years, the manufacturer has been placed in the position of a seller who knows of the defect and who fails to declare it to the purchaser under 2545. Rey, supra. Rey quoted and approved the Media statement that Louisiana has aligned itself with the consumer protection rule, by allowing a consumer without privity to recover [damages, from the manufacturer] whether the suit be strictly in tort or upon implied warranty. 298 So.2d at p. 845. Recovery under this theory (Weber-Media and their progeny) is not simply a creature to be governed solely by either tort or by contract damages since the damage caused a buyer by a defective thing he has purchased smacks of both contract and tort. He may recover damages under either theory. See Robertson, supra at p. 106; Smith v. Max Thieme Chevrolet, supra; Townsend, supra. See also Federal Insurance Co. v. Insurance Co. of No. Amer., 262 La. 509, 263 So.2d 871 *784 (1972), majority and concurring opinions. The declaration of CC Art. 2545 (the manufacturer of a defective thing is answerable to the buyer in damages) does not exclude personal injury damages which are factually and legally caused by the defective thing. In any event, this plaintiff has sued alternatively in tort for these damages.
Attorney fees are recoverable when the facts alleged and the prayer assert the basis of CC 2545. The wording of 2545 does not limit the action in damages it allows to the purchaser. CC 1934, the general article on damages, categorizes tort and contract damages, but does not expressly speak to the issue of multiple theories of recovery. It does speak to the increased liability of a debtor because of his bad faith. See CC 1934(2).
The 1968 amendment to CC 2545 does not qualify or restrict the term reasonable attorney's fees. We shall not interpret a law, as to modify it, when the legislature itself has not modified the law, unless application thereof would lead to absurdity or results clearly contrary to the purpose of the law. CC 2545 was designed to impose liability upon the bad faith seller and the manufacturer of a defective product which causes damage to a buyer. That liability expressly includes attorney fees. Recovery under one theory should not preclude recovery under another theory where the circumstances warrant. Personal injury damages, whether under 2315, Weber, or 2545, and attorney fees under CC 2545, are recoverable here.
This trial took five days and entailed much pretrial discovery and expert testimony. Plaintiff's counsel presented, and had to prepare for, 15 witnesses, and for the cross-examination of the five witnesses presented by defendants. Considering the quantity and quality of the work product of plaintiff's counsel as revealed by this record, the briefs, and to a lesser extent, the amount of recovery, a fair and just attorney fee we deem to be $12,500. CC 2545. Albritton, supra.

QUANTUM
The propeller of the circling boat twice cut into plaintiff, severing bone and flesh in and around his right knee and lacerating his right shoulder and forearm. After being pulled from the water, plaintiff waited at the boat dock for about 30 minutes for an ambulance. He could and did observe the shattered bone (right distal femur) protruding from the lacerated flesh. After a 45 minute ambulance ride to Barksdale Air Force Base hospital and approximately a one hour wait on an orthopedic surgeon who could not be found, plaintiff was moved to Bossier General Hospital for orthopedic treatment.
The accident occurred on August 13, 1974. Plaintiff remained in the hospital five days and required surgery on his knee for fixation of the fractures. He was in a cast for almost six weeks and was not allowed to bear weight on his right leg until October 24, some 11 weeks post accident. In January 1975 plaintiff required another four days of hospitalization for the surgical removal of two of the screws which were employed to reduce the fracture. One screw remains in the bone. On July 22, 1975, plaintiff was released from frequent medical care, except for an annual orthopedic examination. His residual medical disability was said to be 30 percent of the knee. Plaintiff's injuries to his shoulder and arm were not disabling. His medical expenses totaled almost $2,800.
Plaintiff's knee is still subject to occasional swelling and pain. His functional disability consists mainly of an inability to squat and bend, and to climb, to drive, to lift, to stand, and to sit for extended periods of time. He is no longer able to bowl, ride a bicycle, dance, or run.
In Kyle v. City of New Orleans, 357 So.2d 1389 (La.App. 4th Cir. 1978), $25,000 awarded to a 65-year-old retired seaman who suffered a 30 percent lower extremity disability, was said to be on the "low side", but was affirmed. An identical award was affirmed in Monnerjahn v. Aetna Life & Casualty Co., 350 So.2d 1249 (La.App. 4th Cir. 1977), for a 25-year-old truck driver who had a 50 *785 percent residual disability of the lower extremity and who could not return to his occupation.
In Burrows v. Louisiana State Department of Highways, 319 So.2d 867 (La.App. 3d Cir. 1975) plaintiff's injuries included a 20 percent disability to the left leg and lacerations of the scalp and face and a bruised colon, requiring surgical repairs. An award of $75,000 was affirmed.
The jury verdict here was not itemized. Plaintiff's economic experts, on the basis of assumed or hypothetical facts, testified that plaintiff's loss of future wages could or would approximate $110,000. On the basis of this record, it is reasonable for us to deduce that this jury allowed approximately $75,000 for plaintiff's pain, suffering, scarring, deprivations, medical expenses and disability stemming from all of his injuries.

LOSS OF WAGES
Plaintiff was born in 1931 and had a work life expectancy of more than 20 years at the time of the August 13, 1974, accident. Seven months before the accident he retired from the Air Force after 20 years service, where he was trained as an aircraft instrumentation mechanic (avionic technician). After his retirement from the military he worked for Boeing Aircraft Company in work similar to his military specialty, but was laid off on July 25, 1974. His salary was about $4.72 an hour. He applied for a job doing the same work as a civil service employee of the Air Force after his Boeing termination but never heard from this application before or after the accident. Had the Air Force hired him, his starting salary would have been about three cents an hour more than Boeing had paid him. If he had gone to work for the Air Force, gradual raises would have increased his salary to about $8 an hour by July 1978. Expert testimony was that plaintiff was disabled from fully performing all of his former duties.
After the accident, while still on crutches, plaintiff went to a State Vocational-Technical School and was qualified as a copying machines mechanic. On January 10, 1977, he went to work for a private employer earning $550 per month. With gradual wage increases he was earning $850 per month beginning August 1, 1978. His employer is complimentary of plaintiff's work but acknowledges plaintiff's limitations because of his disability.
If plaintiff had been offered and had accepted a civil service job with the Air Force he would have been earning about $16,000 a year, whereas he is now earning $10,200, a difference of at least $6,000 a year with about a 20 year working life expectancy. Plaintiff's economic experts projected his wage loss in excess of $100,000. The ultimate question, however, is whether the award of the jury ($175,000, or approximately $100,000 for this loss) is within the discretion afforded triers of fact.
Loss of earning capacity is an element of damages in cases such as this. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). This loss cannot be calculated with certainty and is subject to the discretion legally afforded trial courts. Robinson v. Graves, 343 So.2d 147 (La.1977); Robison v. Garnett, 238 So.2d 58 (La.App. 1st Cir. 1970); Folse v. Fakouri, 371 So.2d 1120 (La.1979).
Plaintiff was shown to be an industrious individual who sought continuous employment and who sought to train himself for other employment while still on crutches after the accident. We cannot dispute that it is reasonable for a jury or for us to conclude that this plaintiff would have sought and found his maximum level of employability after his job with Boeing Aircraft was terminated, even if it was necessary that he re-train himself to acquire other skills. It is also reasonable to conclude that plaintiff would have re-trained himself earlier had it not been for the accident. Each of these cases, of course, must depend on its own individual facts and our examination of whether the jury abused its discretion depends heavily upon the trier of fact's assessment of the industry and credibility of the individual plaintiff. Thus the *786 issue for our determination: Did this jury abuse its discretion by awarding this plaintiff a total of $175,000 which we deduce in the most favorable light, was approximately $100,000 for loss of earning capacity and $75,000 for injuries, disability, scarring, expenses, and pain and deprivation, past and future? While these figures are on the high side, we cannot say after consideration of all the evidence that the amount awarded constitutes an abuse of discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).

DECREE
The 1976 judgment dismissing plaintiff's demands in redhibition is reversed. The judgment appealed is amended to award plaintiff $12,500 as attorney fees with legal interest from the date of this opinion. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978).
At appellants' cost, judgment, as AMENDED, is AFFIRMED.
NOTES
[*] Bolin, J., took no part.
[1] "A plaintiff may cumulate against the same defendant two or more actions even though based on different grounds, if: * * *" CCP 462. Emphasis supplied.

"While a single plaintiff may cumulate in the same suit two or more actions against the same defendant having no [factual] connection with each other, and based on different causes of actions, of necessity, etc." Comment (a), CCP 463. Emphasis supplied. Bracketed material supplied.
While the language of our procedural law is sometimes vague in meaning, e. g. action, cause of action, obligation, demand, theory of the case, irreparable injury, etc., we interpret grounds to mean the material or juridical facts upon which the plaintiff bases his several demands or causes of action.
The material or juridical facts are important in res judicata cases and are there equated both with "grounds" and with civilian "cause", as distinguished from "cause of action." See Mitchell v. Bertolla, 340 So.2d 287, 291 (La. 1976).
[2] This result was earlier pronounced in Allen v. Anderson, 57 So.2d 50, 51 (Orl.App., 1952), in this concise language:

"A judgment dismissing, on exception, only a part of that which is claimed by plaintiff is an interlocutory judgment, from which no appeal lies unless there results irreparable injury, and the entire matter may be presented to the appellate court when a final judgment is rendered in the case. Therefore, the entire case, inclusive of the judgment maintaining the exception as against the alternative demand, should have been passed upon by us in the appeal. See Kaufman v. H. G. Hill Stores, Inc., La.App., 159 So. 745."