FORET, Judge.
This suit was brought by the purchasers of a mobile home which began to evidence severe defects shortly after its delivery. Plaintiffs, Kenneth and Andrea Walker, brought a redhibitory action against the defendants, Universal Business Association, Inc. and Tidwell Industries, Inc., the seller and manufacturer, respectively, of the mobile home. During the course of the trial, plaintiffs and defendant, Tidwell, entered into a settlement which released Tid-well. Following trial on the merits, the court rendered judgment in favor of plaintiffs and against defendant, Universal Business Associates, Inc., finding that plaintiffs were entitled to redhibition. The trial court also found that defendant, Universal Business Associates, was in bad faith and that plaintiffs were entitled to attorney’s fees. The trial court entered judgment for plaintiffs in the amount of $9,739.93, representing restitution of the purchase price of the mobile home, minus a credit for its use, plus $5,000 attorney’s fees. Defendant has appealed.
This appeal presents us with several issues:
1. Whether redhibition is the proper remedy for a buyer who purchases an object which is not defective at the time of the sale but is damaged in delivery;
*994 2. Whether the proper remedy for such a purchaser sounds in contract, tort, or both; and
3. Whether, under the circumstances of this case, plaintiffs failed to mitigate their damages.
FACTS
On August 9, 1979, plaintiffs, Kenneth and Andrea Walker, and defendant, Universal Business Associates, Inc., executed a number of documents in connection with plaintiffs’ purchase of a mobile home from defendant. These documents included: a retail installment contract for the purchase of the mobile home, a cash purchase agreement, a closing agreement, and a limited warranty. The object of the sale and the price were clearly indicated by these documents.
In both the closing agreement and the cash purchase agreement, defendant obligated itself to set up the mobile home on plaintiffs’ homesite. The limited warranty warranted that the set-up operations would be performed in compliance with state and local requirements and that substantial defects would not occur to the mobile home during transportation to the homesite or set-up. Under the warranty, defendant obligated itself to repair any damage done to the mobile home during its transportation or set-up.
The mobile home which was the subject of the sale had been manufactured by Tid-well Industries, Inc. in Mississippi. It had been transported some 500 miles to defendant’s sales lot in New Iberia, where it had remained for over 60 days. During the 60-day period, there is no evidence that any of defendant’s employees noticed any leaking or other defects in the mobile home. Plaintiff, Kenneth Walker, testified that he inspected the mobile home before he purchased it and found no evidence of leaking or other defects.
Approximately one week after the parties executed the sale documents, defendant’s employees delivered the mobile home to plaintiffs’ homesite. The mobile home and truck pulling it had to enter plaintiffs’ lot by way of a driveway which crossed a ditch. As the mobile home was being pulled onto the lot, the wheels on the right side of the mobile home slipped into the ditch. For some five hours, the mobile home was stuck in the ditch. During that time, defendant’s employee repeatedly tried to pull the mobile home out of the ditch by backing up and then going forward. There was testimony that this caused the mobile home to noticeably bow and twist. Eventually, defendant’s employees pulled the mobile home out of the ditch by jacking it up and placing cement blocks under the wheels. Because of wet ground, the truck was unable to pull the mobile home into place. A tractor was attached to the opposite end of the mobile home and used to pull the trailer and truck into place. Defendant’s employees attempted but were unable to level the mobile home properly and promised plaintiffs that they would return and finish leveling the home. Defendant’s employees never returned for that purpose.
Although plaintiffs did not notice any damage on the day of delivery, one week later defects in the home became evident. A bulge developed in the outside wall of the mobile home and some of the sheets of metal covering the home began to pop loose. Soon thereafter, the wall in one of the bedrooms began to buckle, and the paneling began to pull loose. Then the kitchen cabinets began to settle and a gap developed between the top of the cabinets and the ceiling. Within six weeks of the mobile home’s delivery, the ceiling started leaking and the floor of one of the bedrooms became unstable.
Plaintiffs informed defendant of the problems they were having and were told that defendant would call the manufacturer. When no one came to make repairs, plaintiffs contacted the manufacturer. The manufacturer sent someone to perform repairs in February or March of 1980. The repairman attempted to repair the floor in the bedroom but was unable to do so and damaged the ceiling in the process. He also attempted to repair the roof to stop *995 the leaking. Despite the repairs, the mobile home continued to leak. About a month later, another repairman from the manufacturer performed some minor repairs. After plaintiffs filed suit, some repairs were performed by a repairman sent by defendant, Universal Business Associates. Despite these further attempts to repair the mobile home, the roof continued to leak. At the time of trial, which took place in July of 1983 and January of 1984, considerable damage had been caused by the continued leaking of the roof.
REDHIBITION
The trial court found that plaintiffs were entitled to redhibition. Yet, based on the trial court’s own findings of fact, redhibition is not the proper remedy in this case. The trial court found that the mobile home had no redhibitory defects before it left defendant’s sales lot, and that the damage occurred somewhere between the defendant’s sales lot and plaintiffs’ homesite. On August 9, 1979, approximately one week before the mobile home was delivered, plaintiffs had executed a number of documents in connection with the purchase of the mobile home. The object of the sale and the price were clearly indicated in these documents. There can be no doubt that the sale of the mobile home was perfected at that time since both the object of the sale and the price were agreed upon. That the trailer had not yet been delivered made no difference. See LSA-C.C. Art. 2456; C & A Tractor Company v. Holland American Insurance Co., 445 So.2d 1286 (La.App. 3 Cir.1984), writ denied, 449 So.2d 1348 (La.1984). In order to give rise to the redhibitory action, a defect must have existed prior to the time of the sale. LSA-C.C. Art. 2530. The defects in the mobile home did not come into existence until after the sale was perfected at the time of the mobile home’s delivery. Plaintiffs are not entitled to red-hibition.
PLAINTIFFS’ REMEDY
Although plaintiffs are not entitled to redhibition, they are entitled to judgment against defendant. Plaintiffs may recover from defendant based on defendant’s breach of its contractual obligations. When defendant damaged the mobile home during delivery, it breached its obligation as a seller. A seller has two principal obligations, that of delivery and that of warranting the thing which he sells. LSA-C.C. Art. 2475. The seller must deliver the object of the sale in the same state in which it was in at the time of the sale without any change caused by the act or fault of the seller. LSA-C.C. Art. 2487. Until the object of the sale is delivered, the seller is obligated to guard it as a faithful administrator and, if it is destroyed or damaged through his fault, the seller is responsible for the loss. LSA-C.C. Art. 2468. The evidence supports the trial court’s finding that the mobile home was damaged during its transportation to plaintiffs’ homesite.[1] Defendant’s employees negligently damaged the .mobile home while delivering it. This was a breach of defendant’s obligation as a seller under the pertinent Louisiana Civil C°de articles. Additionally, defendant had expressly warranted that it would repair any damage done to the mobile home during delivery. Defendant breached its warranty obligation to plaintiffs when it failed to repair the damage done to the mobile home.
At the time of trial, the damage to the mobile home was substantial. Stanley Glynn Vickery, an expert on mobile home repair, testified on behalf of plaintiffs that the cost of repairs would exceed the value of the mobile home and that he would not recommend any attempt at repairing it. The deteriorated condition of the mobile home at the time of trial was a direct result of defendant’s breach of its obligations. Defendant negligently damaged the mobile home during delivery and breached an express warranty to plaintiffs by failing to repair that damage. A pur *996 chaser is entitled to the rescission of the sale if the purchased item becomes damaged and unserviceable prior to delivery through the fault of the seller. Max Barnett Furniture Co. v. Kritikos, 166 So.2d 543 (La.App. 4 Cir.1964). In the case now before us, although the mobile home apparently did not become unserviceable until sometime after delivery, its unserviceable condition was a direct result of defendant’s breach of the obligation it had undertaken as the seller of the mobile home. Prior to delivery, the negligence of defendant’s employees caused serious damage to the mobile home. After delivery, defendant’s continued failure to fulfill its warranty obligations allowed the condition of the mobile home to continue to deteriorate until it was rendered unserviceable. Under the circumstances, plaintiffs are entitled to rescission of the sale and return of the purchase price.
The trial court found that at the time of trial, plaintiffs had paid $12,799.93 of the purchase price. The trial court also found that plaintiffs had gotten some use of the mobile home and allowed defendant a credit for $3,060. We agree with these findings of the trial court and, accordingly, find that plaintiffs are entitled to $9,739.93 for the restitution of their purchase price, minus the credit for use of the mobile home.
Although the act of damaging the mobile home was a breach of defendant’s contractual duty, it was also a breach of defendant’s duty under Art. 2315. Accordingly, recovery may be allowed under both the theory of breach of contract and tort. See Albritton v. McDonald, 363 So.2d 925 (La.App. 2 Cir.1979), writ denied, 366 So.2d 561 (La.1979); Fontenot v. F. Hollier & Sons, 478 So.2d 1379 (La.App. 3 Cir.1985). Under C.C. Art. 2315, damages may be awarded for inconvenience, loss of intellectual gratification or physical enjoyment or other losses of life or lifestyle which could not be measured in monetary terms. Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2 Cir. 1984). From the time of the mobile home’s delivery until the time of trial more than four years later, Kenneth Walker lived in the mobile home. His wife, Andrea Walker, lived in the mobile home until November of 1981, when she and Kenneth Walker separated. Mr. Walker testified regarding the many inconveniences he suffered due to the damaged condition of the mobile home. Whenever it would rain, the mobile home would leak excessively. There is no doubt that plaintiffs’ lives were greatly inconvenienced as a result of defendant’s negligence. We feel that plaintiffs are entitled to damages in the amount of $3,000 for inconvenience and loss of intellectual gratification and physical enjoyment.
MITIGATION OF DAMAGES
Defendant contends that plaintiffs failed to mitigate their damages. Although the record does show that the condition of the mobile home deteriorated because of continued leaking and resulting water damage, the evidence does not indicate that plaintiffs breached their obligation to mitigate their damages. Contractually, defendant had obligated itself to repair any damage which occurred to the mobile home during delivery. Plaintiffs called upon defendant to comply with its contractual obligation on a number of occasions. However, defendant failed to repair the mobile home and it continued to leak. While it is true that defendant and the manufacturer did send repairmen to work on the mobile home, rather than supporting defendant’s contention that plaintiffs failed to mitigate their damages, these failed attempts at repairing the mobile home tend to negate any argument of failure to mitigate. The manufacturer, Tidwell, sent a repairman on two different occasions. On at least one occasion, a repairman was sent by defendant. Despite the efforts of both the manufacturer and defendant at repairing the mobile home, it continued to leak. If the manufacturer and defendant, a dealer in mobile homes, were not able to repair the mobile home sufficiently to prevent further damage, should we expect anything more from plaintiffs, who were only con *997 sumers with no expertise or special knowledge with regard to mobile homes. We think not.
For the foregoing reasons, the judgment of the trial court is amended to award plaintiffs, Kenneth and Andrea Walker, as against defendant, Universal Business Associates, Inc., $3,000 in general damages.
The judgment of the trial court is reversed insofar as it awarded plaintiffs attorney’s fees.
In all other respects, the judgment of the trial court is affirmed. Costs are assessed against defendant-appellant, Universal Business Associates, Inc.
AMENDED IN PART, REVERSED IN PART, AND RENDERED.

. Specifically, we feel that plaintiffs proved by a preponderance of the evidence that the mobile home was damaged by its fall into the ditch and the subsequent efforts to extricate it.