677 So.2d 678 (1996)
Harry R. COLEMAN, Jr., Plaintiff-Appellee,
v.
FISHER LUMBER CORPORATION, et al., Defendants-Appellants.
No. 28446-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Writ Denied September 3, 1996.
*679 Coenen & Cruse by William R. Coenen, Jr., Rayville, Samuel T. Singer, Winnsboro, Thomas E. Allen, Monroe, for Plaintiff-Appellee.
McGlinchy, Stafford & Lang by Frank Voelker, Jr., Thomas A. Roberts, Margaret Diamond, New Orleans, Adams & Reese, by J. Forrest Hinton, New Orleans, for Defendants-Appellants, Muirfield/Pitts, et al.
Stephen A. North, W. Craig Henry, Monroe, for Defendants-Appellees, Fisher Lumber Corp., et al.
Before MARVIN, C.J., and NORRIS and WILLIAMS, JJ.
MARVIN, Chief Judge.
The sole issue in this appeal is whether Franklin Parish is the proper venue for a damage action by a Mississippi real estate broker against the buyers and sellers of a 50,000-acre tract of farm- and timberland situated in the northeast Louisiana parishes of Tensas, Concordia, Catahoula and Franklin. The defendants are 13 individuals, partnerships and corporations who are generally aligned in two groups: four seller-defendants, the Fisher group, and nine buyer-defendants, the Muirfield group. Plaintiff Coleman has alleged a breach of contract claim against the Muirfield defendants, and tort claims against some or all defendants in both groups for conspiracy to interfere with contractual relationships, defamation and intentional infliction of emotional distress.
One of the four Fisher defendants, a Michigan domiciliary, was dismissed from the action on an exception of improper venue in a judgment that is now final and is not before us in this appeal. The other three Fisher defendants did not except to venue.
The Muirfield defendants, none of whom are domiciled in Franklin Parish, appeal a judgment denying their exception of improper venue on findings that Franklin Parish is a proper venue for Coleman's claims against them under La.C.C.P. arts. 73, 76.1 and 78, notwithstanding the general venue provision of Art. 42 that the parish of a defendant's domicile is the proper venue.
With respect to one of the Muirfield defendants, Benny Street, a mere employee of those defendants who did not contract with Coleman, venue in Franklin Parish has not been shown to be proper on this record. The allegations against Street are in tort. We reverse as to Street and render judgment sustaining his venue exception. As to the remaining Muirfield defendants who excepted, we affirm the judgment.

LEGAL AND FACTUAL CONTEXT
The C.C.P. articles relied on by the trial court allow the plaintiff to bring
an action on a contract in the parish where the contract was executed, or in the parish where any work or service was performed or was to be performed under the contract (Art. 76.1);
an action against the partners of an existing partnership on a partnership obligation in any parish of proper venue as to the partnership (Art. 78); and
an action against joint or solidary obligors in the parish of any defendant-obligor's domicile (Art. 73).
Coleman also sought to establish venue under Art. 74, which allows an action on an offense or a quasi offense to be brought in *680 the parish where the wrongful conduct occurred, or in the parish where the damages were sustained. The trial court found this article inapplicable, noting that Coleman did not assert or show that any of the alleged tortious conduct occurred or caused damage to him in Franklin Parish. Coleman did not appeal or answer the appeal to challenge this ruling.
Before discussing the venue articles further, we summarize the facts alleged in Coleman's pleadings and elicited at the hearing on the venue exception, which was tried at the same time as other exceptions which are not at issue in this appeal:
The land in question was owned for many years by Fisher Lumber Corporation, an affiliate of General Motors Corporation. Most of the land, about 54,000 of the 57,000 total acres, is located in the parishes of Tensas and Concordia. Of the remaining 3,000 acres, roughly 2,000 are in Franklin Parish and about 1,000 are in Catahoula Parish. In the late 1980s, more than half of the total acreage contained hardwood timber stands, which had been professionally managed for sustained income production over the years. Portions of the wooded areas had been leased to hunting clubs. The rest of the land, some 20,000 acres, was subject to farm and mineral leases.
In 1989, the three individual Muirfield defendants, Magalen Bryant, Michael Crane and Ray Pitts, considered purchasing the Fisher land for investment purposes. Coleman's petition alleged that the prospective purchasers hired Coleman to assess the feasibility and profitability of reselling the land to local buyers who would agree to place conservation servitudes or easements on much or all of the hardwood timberland contained in the tract.
Mrs. Bryant and her son, Crane, are domiciled in Virginia, and had used Coleman's services in other Louisiana land dealings. Pitts, a real estate investor residing in Concordia Parish, was an acquaintance, but not a client, of Coleman's before the Fisher transaction.
Fisher Lumber Corp., one of the Fisher defendants who is alleged to be a solidary tort obligor with the Muirfield defendants, is a Delaware corporation with an office in Wisner, Franklin Parish.
When purchasing land as a real estate investment, Mrs. Bryant and her family regard conservation of wildlife habitats as a priority of equal rank with monetary profit. Fisher Lumber Corp. and its parent company, General Motors, also had conservation goals for the hardwood timberland on the Fisher tract, and had refused prior offers to buy the land, including one made by Pitts, which did not take these goals into account.
Coleman alleged that Bryant, Crane and Pitts verbally agreed to compensate him for his services in "putting together a profitable real estate transaction that had conservation benefits to the land," and that this obligation was assumed by the Muirfield/Pitts partnership, a Mississippi general partnership later formed by the three individual investors, through their various corporations and limited partnerships, for purposes of acquiring the land. None of these entities were alleged or shown to be domiciled in Franklin Parish.
The remaining Muirfield defendant, Benny Street, was an employee of the Bryant family and an officer of one or more of the family's corporations, including two of the corporate Muirfield defendants. Street was not alleged or shown to have been a party to the contract with Coleman or a partner of the Muirfield/Pitts partnership, being initially named as a defendant only in Coleman's tort claims. Coleman's later allegation that Street was a "joint venturer" with the other Muirfield defendants with respect to the contract claim was refuted by evidence at the venue hearing that Street was involved in the Fisher transaction solely as a corporate officer and a salaried employee of one or more of the Bryant family's corporations, and not as a principal to any contract, partnership or joint venture involved in the family's dealings with Coleman.
Bryant, Crane, Pitts and Street testified by deposition at the hearing on the venue exception. Bryant and Crane generally admitted the existence of the verbal "agreement for services" alleged by Coleman, while disputing the amount of compensation they *681 agreed to pay him for his services. Pitts did not consider himself a party to that agreement.
Pitts, Crane and Street testified that Coleman was required to perform his contractual "due diligence" services, whether for all three investors or for only the two, in each of the four parishes involved in the transaction, including Franklin Parish. Crane explained what Coleman's contractual services entailed:
Q. Do you recall what the initial feeling of [your] family was and ... what direction you gave Ray Coleman in order to pursue the feasibility of this purchase?
A. I can't recall any exact directions, but it would have been more of the lines that my mother would have wanted to save as much of the timber and put easements on the property, and my directions would have been that I would not look at it unless I felt that we could either sell and/or minimize what our exposure would be in the entire transaction.
Q. Okay. I'm gathering, then, that there [were] some joint ideas about acquiring the property: [C]onservation, on the one hand, [and] ... resale on the other?
A. There was never an intent to hold title to the property ... for any length of time, so there was always the interest of resale. [E]ven placing the conservation easements on it does not mean retaining ownership [of] it.
Q. Did you begin receiving information back ... from Mr. Coleman concerning... timber valuations, ... mineral valuations,... [and] farmers who were farming the property [they rented from Fisher, who desired to have the farmland offered for sale to the individual farmer-tenants at a fair price]? Did you begin receiving information back on the feasibility through Mr. Coleman on these various subjects?
A. Certainly, it would have been through [the] due-diligence process [assigned to Coleman and others] to check the viability of the project.... [The term "due diligence"] means trying to check to insure that ... any potential problem has been answered prior to entering into the transaction. So, we would look at what different items would, one, cause difficulties and/or, two, make it more expensive to complete the transaction.
Q. Are we talking in terms of looking for physical attributes of the property, such as timber, minerals, whether there's farm leases presently on what percentage of the farmland? ...
A. [T]hat would be part of the ... due diligence, but there would also be the viability of selling the property, there would be finding out more about the area, as far as how quickly there was turnover on the property.... (Emphasis and brackets supplied.)
Though Coleman was not the only person involved in the due diligence efforts, he "certainly played a large part in doing the negotiations and ... bringing the project to a point... where a decision could be made on it," according to Crane.
Coleman described the services he performed under the contract:
It was some very unique and lengthy due diligence. [T]his property had minerals. It had farmland. It had cut-over land. It had timber. And each one of those parts of the transaction [was] very difficult. So I visited with individual farmers, ... bankers who knew the farmland [and] the tenants. On minerals I visited numerous geologists. Tried to get a handle on where the minerals were.... I visited with GM's timber people, other timber people, other timber buyers....

Q. [W]ere all of the things you [did] done in Franklin Parish?

A. All the parishes.... We had numerous meetings with farmers and hunting club people in Wisner [Franklin Parish], at the [Fisher Lumber] corporate headquarters....

Q. Did you personally meet with [Michael Crane] here in Wisner, Franklin Parish, concerning the negotiating with the farmers?

A. Yes. And [on] another occasion when we visited with our environmental people here and [with] General Motors.

(Emphasis supplied.) *682 Coleman's testimony that he performed work or services under the contract in each of the four parishes, including Franklin Parish, was not impeached on cross-examination, and was generally corroborated by the testimony of the Muirfield defendants, discussed supra.

DISCUSSION
After arguing in their brief that the C.C.P. "exceptions" to the Art. 42 "general rule" of domicile-based venue must be strictly or narrowly construed, the Muirfield defendants conceded at oral argument in this court that the longstanding rule of strict construction has been tempered or relaxed in recent years. See, for example, Jordan v. Central Louisiana Electric Co., 95-1270 (La. 6/23/95), 656 So.2d 988; and McInnis Bros. v. Peoples Water Service, 28,216 (La.App.2d Cir. 1/24/96), 666 So.2d 1323. See also Tucker v. Ochsner Health Plan, 28,318 (La.App.2d Cir. 5/8/96), 674 So.2d 1052.
The crux of the appeal is the contention that the evidence before the trial court on the venue exception does not establish a "sufficient factual nexus" with Franklin Parish under any of the codal venue provisions relied on by the trial court and summarized above (Arts. 73, 76.1 and 78)[1]. The first two articles, respectively dealing with joint or solidary obligors and with contract actions, establish these permissive venue provisions as a supplement or an alternative to the Art. 42 domicile-based provision:
An action against joint or solidary obligors may be brought "in a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant[.]" (Art. 73).
An action on a contract may be brought in the parish where the contract was executed or in the parish where any work or service was performed or was to be performed under the contract. (Art. 76.1).
Compare the mandatory provisions of Art. 78: "[A]n action against a partner of an existing partnership on an obligation of the latter, or on an obligation growing out of the partnership, shall be brought in any parish of proper venue as to the partnership." Our emphasis. The mandatory nature of Art. 78 is reiterated in Art. 45, which states, "Article 78 ... governs the venue exclusively, if this article conflicts with any of Articles 42 and 71 through 77[.]"
Coleman has alleged that three of the nine Muirfield defendants, Bryant, Crane and Pitts, individually contracted with him for his services relating to the Fisher transaction, and that this obligation was later assumed by the Muirfield/Pitts general partnership, which was formed by the three individual defendants through various legal entities, three corporations and a limited partnership, for the purpose of acquiring the Fisher land. The Muirfield/Pitts partnership and each of its alleged partners have also been named as defendants in the breach of contract claim. The fourth individual Muirfield defendant, Benny Street, is not alleged or shown to have contracted with Coleman.
As mentioned, Street was simply a salaried employee and an officer of one or more of the Bryant family's corporations. Street was not shown to have been a principal to any contract, partnership or joint venture involved in the Fisher transaction. The trial court found Franklin Parish to be a proper venue under Arts. 76.1 and 78 as to all Muirfield defendants except Street.
Street was, however, named as a defendant in Coleman's tort claims for defamation, conspiracy to interfere with contractual relationships and intentional infliction of emotional distress. Coleman has alleged that Street and other defendants from one or both groups, Muirfield and Fisher, are solidary tort obligors, and that one tort defendant, Fisher Lumber Corporation, may be sued in Franklin Parish under Art. 42, making venue proper there as to all other tort defendants, including Street, under Art. 73. The trial court agreed that Franklin Parish was a proper venue for the tort claims against Street and the other Muirfield defendants under Art. 73.
Additionally, or perhaps alternatively, the trial court found that the breach of contract and tort claims alleged by Coleman against the Muirfield defendants arose from one factual circumstance, making Franklin Parish a *683 proper venue for all claims against those defendants once that parish is found to be a proper venue as to any one claim. See Albritton v. McDonald, 363 So.2d 925 (La. App.2d Cir.1978), writ denied; and Reeves v. Dixie Brick, Inc., 403 So.2d 792 (La.App.2d Cir.1981).
We first address the venue issue as it pertains to the Muirfield defendants other than Street, all of whom were alleged to be liable to Coleman for breach of the contractual obligation allegedly undertaken by the three individual investors and later assumed by the Muirfield/Pitts partnership.

CONTRACT CLAIMARTS. 76.1 AND 78
Because the provisions of Art. 78 (exclusive venue for action against partners of existing partnership) and Art. 76.1 (permissive venue for contract action) are factually intertwined here, we address them together, as did the trial court:
The [alleged verbal] contract [with Coleman] involved services by Coleman as an employee, independent contractor, or agent as to the Fisher property. The contract was intended to cover the Fisher property, including th[e] property in Franklin Parish. Therefore, Franklin Parish is one of the parishes "where any work or service was performed or was to be performed under the terms of the contract." [Art. 76.1. It is undisputed that the contract was not executed in Franklin Parish.]
Under ... Article 76.1, venue in Franklin Parish is proper as to Bryant, Crane and Pitts, with whom the contract was initially negotiated, as well as the Muirfield/Pitts Partnership, which assumed the contract. Its [entity] partners ... are responsible for the obligations of [the] partnership under [La.C.C. art.] 2814 et seq. Article 76.1 is also proper as to these partners as stated in ... Article 78, Comment (c), which states that a partnership may have multiple venues, which would include the venue under the contracts article [Art. 76.1]. (Brackets and paragraphing supplied.)
The trial court found Franklin Parish to be a proper venue under Arts. 76.1 and 78 as to all Muirfield defendants except Street. The court's exclusion of Street from the contract and partnership venue analysis is supported by the factual evidence in the record, though not reflected in the appellate briefs of the litigants, who simply group all Muirfield defendants together irrespective of which claims, tort or contract, are being discussed. Adopting the trial court's distinction, we hereafter exclude Street from our discussion of contract and partnership venue, and include him in the tort venue analysis.
On appeal, the Muirfield defendants do not complain of the trial court's legal conclusion that when the action asserted against the partners of an existing partnership is founded on an alleged contractual obligation of the partnership, the Art. 76.1 venue for a contract action constitutes a parish of proper venue as to the partnership under Art. 78. In such circumstances, no real Art. 45 conflict arises between the mandatory Art. 78 venue, on the one hand, and the permissive Art. 76.1 venue, on the other. Compare the broad wording of Art. 78, which states that an action against the partners of an existing partnership "shall be brought in any parish of proper venue as to the partnership," with the more restrictive wording of Art. 73, which limits the alternative venue provisions for an action against joint or solidary obligors to "a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant." Our emphasis.
Resting their venue argument solely on factual grounds, and couching it in personal jurisdiction terminology, the Muirfield defendants contend the evidence in this record does not establish a "sufficient factual nexus" between the contract which Coleman has alleged they breached and Franklin Parish.
Defendants initially claim Coleman and the trial court "blurred the distinction" between the verbal contract for Coleman's services, the contract allegedly breached, and the written exchange agreement between the principals to the transaction, Fisher Lumber Corporation and the Muirfield/Pitts partnership. Defendants correctly note that Coleman was not a party to the written exchange agreement, which affected all of the Fisher land, including the land in Franklin Parish, nor a *684 party to the first of a series of land transfers that occurred in April 1990, about the time that Coleman's involvement in the project ended. According to this record, no Franklin Parish land was conveyed at the April 1990 closing.
With respect to the verbal agreement for Coleman's services, defendants initially argue that Art. 76.1 does not apply to this particular contract, which they describe as "amorphous," or of an indeterminate type. Alternatively, defendants note that Coleman did not allege or show that the verbal agreement was "executed" in Franklin Parish. Emphasizing that only a small percentage of the total acreage involved in the Fisher transaction was in Franklin Parish, defendants argue that any contacts Coleman had with Franklin Parish to perform work or services under the verbal agreement were "incidental," and did not establish a "sufficient factual nexus" with that parish to support venue there.
As we appreciate Art. 76.1, "an action on a contract," of whatever type, may be brought in "the parish where any work or service was performed or was to be performed under the terms of the contract." Our emphasis. The article is not facially ambiguous and does not restrict or limit its applicability to actions on certain types of contracts or to situations where a "substantial" or some other measurable amount of the contractual work or service was performed or was to be performed in the parish where the action is brought. See generally and compare Tucker v. Ochsner Health Plan, cited supra.
Coleman testified that he performed his "due diligence" work or services under the verbal contract in each of the four parishes involved in the Fisher transaction, including Franklin Parish. His testimony on this point was not disputed, but was corroborated by the defendants' witnesses, Crane, Pitts and Street, each of whom testified that Coleman was expected and required to perform his "due diligence" work or services in each of the four parishes, including Franklin. Coleman's "work" was to obtain the information sought by the Muirfield defendants to assess whether the proposed purchase would meet their specific and somewhat unique tandem goals of quick resale to conservation-minded buyers.
The record clearly supports the trial court's conclusion that Franklin Parish is a proper venue for Coleman's breach of contract claim under Arts. 76.1 and 78.
The contract claim was asserted against eight of the nine Muirfield defendants, excluding Street, against whom only tort claims were asserted. One or more tort claims were also brought against the eight defendants sued in contract.

TORT CLAIMSARTS. 73 AND 74
As mentioned, Coleman has not asserted or shown that the alleged tortious conduct of any defendant occurred in Franklin Parish, nor that he sustained any tort damages there. The Art. 74 venue provisions for an action on an offense or a quasi offense are thus inapplicable.
As to the eight Muirfield defendants sued in contract, some of whom were also sued in tort, Franklin Parish is a proper venue for all claims against them because the tort and contract claims arise from the same factual circumstances. In the interest of judicial economy, particularly the avoidance of separate and duplicative trials and perhaps inconsistent dispositions, all claims against these defendants may be brought in Franklin Parish, which has been shown to be a proper venue for the contract claim. Albritton v. McDonald; Reeves v. Dixie Brick, Inc., both cited supra.
As to Street, however, who is alleged to be a solidary tort obligor with other defendants, including Fisher Lumber Corporation, Coleman's sole argument for venue in Franklin Parish is Art. 73, which allows a joint or solidary obligor to be sued in any parish which is a proper venue as to any defendant-obligor, "under Art. 42 only."
Coleman has alleged that Fisher Lumber Corp. is a foreign corporation licensed to do business in Louisiana. The Art. 42 venue as to Fisher lies "in the parish where its primary place of business in the state is located or in the parish designated as *685 its principal business establishment in its application to do business in the state." Art. 42(4).
In Paragraph 2 of his first supplemental and amended petition, Coleman alleged that Fisher's "principal business establishment" is located at a specified municipal address in Wisner, Franklin Parish, and that Fisher "may be served through its registered agent for service of process" in Baton Rouge. Without excepting to venue, Fisher filed an answer in which it denied having "its principal place of business in Wisner, Louisiana," and admitted the remaining allegations of Paragraph 2. Fisher's answer was filed after the hearing, but before the trial court's ruling, on the venue exception filed by Street and the other Muirfield defendants.
In discussing the Art. 73 solidary obligor venue, the trial court stated:
... One of the parties who is allegedly liable for the torts committed through the conspiracy is Fisher Lumber Corporation, domiciled in Wisner, Franklin Parish, Louisiana, which is therefore subject to venue under [C.C.P. art.] 42 in Franklin Parish. Thus, through implementation of [Arts. 73 and 42], venue is therefore proper as to all conspirators, including both the Muirfield defendants and the Fisher defendants, involved in the commission of the intentional torts.... (Our emphasis and brackets.)
It is unclear from this record whether the trial court simply accepted as true Coleman's allegation that Fisher Lumber Corporation is domiciled in Franklin Parish under Art. 42(4) for purposes of deciding the exception, or whether the court also considered the evidence on this issue that was presented at the venue hearing. The allegation, however, was denied by Fisher in its answer, which was filed in the record before the exception was decided. The evidence presented at the hearing showed only that Fisher had an office in Wisner, Franklin Parish, during the time in question. Coleman's description of Fisher's Wisner office as its "corporate headquarters," was not corroborated by any witness with personal knowledge of the location and classification of Fisher's corporate office or offices in Louisiana. Fisher's application to do business here was not introduced in evidence.
On this record, we must conclude that the trial court was clearly wrong in its factual finding that Fisher was domiciled in Franklin Parish within the meaning of Art. 42(4) when Coleman brought his action, thus supporting venue there against all other alleged solidary tort obligors, including Street, under Art. 73. The Art. 42 domicile of a foreign corporation licensed to do business in Louisiana is not simply the parish where an office of the corporation is located, but "the parish where its primary place of business in the state is located or ... the parish designated as its principal business establishment in its application to do business in the state."
While Fisher is deemed to have waived any objection it may have had to venue in Franklin Parish by answering the petition without filing an exception of improper venue, Fisher's waiver does not avail Coleman on the venue exception filed by the Muirfield defendants. C.C.P. art. 928; Spott v. Otis Elevator Co., 601 So.2d 1355, 1360 (La.1992); Simmons v. Hope Contractors, Inc., 447 So.2d 638 (La.App. 3d Cir.1984); Habig v. Popeye's, Inc., 553 So.2d 963 (La. App. 4th Cir.1989).

CONCLUSION AND DECREE
The record supports the trial court's conclusion that Franklin Parish is a proper venue for all claims against the Muirfield defendants other than Street, whether in contract or in tort, under C.C.P. arts. 76.1 and 78, and under Albritton and Reeves, respectively. As to those defendants, we affirm the judgment.
With respect to the claims against Street, however, venue in Franklin Parish has not been shown to be proper on any of the several grounds asserted by Coleman: contract, partnership, joint venture or tort. Reversing the judgment in part, we grant the venue exception in favor of Street and dismiss him from the action, without prejudice to Coleman's right to bring an action against him in a court of proper venue. In all other respects, and at the cost of the remaining *686 Muirfield appellants, the judgment is affirmed.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
NOTES
[1] Art. 76.1 was enacted in 1991 and was in effect when this action was filed in September 1992.