682 So.2d 838 (1996)
DUPREE-SIMPSON FARMS, Plaintiff-Appellee,
v.
HELENA CHEMICAL COMPANY, et al., Defendants-Appellants.
JOE D. SIMPSON FARMS, Plaintiff-Appellee,
v.
HELENA CHEMICAL COMPANY, et al., Defendants-Appellants.
Nos. 28739-CA, 28740-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
*839 Marshall T. Napper, Monroe, for Defendants-Appellants.
Lewis O. Sams, Coushatta, for Plaintiff-Appellee.
Before HIGHTOWER, WILLIAMS and GASKINS, JJ.
WILLIAMS, Judge.
In this action alleging tort and contract claims, the plaintiffs, Dupree-Simpson Farms and Joe Simpson Farms, filed suit against the defendants, Helena Chemical Company, Setre Chemical Company, Ciba-Geigy Corporation, Abell Corporation, Paul Foshee Dusting Company, Inc. and Paul Foshee, Jr., to recover damages resulting from crop loss. Following a jury verdict, the trial court rendered judgment against the defendants, Helena Chemical Company and Setre Chemical Co. ("Helena"), and in favor of plaintiffs, Dupree-Simpson Farms and Joe Simpson Farms, for the sum of $61,500 and attorney fees of $20,500. Subsequently, the trial court granted the plaintiffs' motion for judgment notwithstanding the verdict, increased the plaintiffs' damage award to $123,000 and awarded attorney fees in the amount of $41,000. The defendants appeal.

FACTS
Plaintiffs' farms are located in Red River Parish and Natchitoches Parish. Michael Simpson is a partner with the plaintiffs and manages the daily business operation of the farms. Approximately one-half of the plaintiffs' land was planted with cotton. Helena *840 Chemical Company manufactures chemical insecticides and sells them under the name of its subsidiary, Setre Chemical Company. In 1992, the plaintiffs purchased chemicals from Helena.
On July 16, 1992, the chemicals methyl parathion, dimethoate and "Penetrator Plus," produced by Helena, were applied to plaintiffs' cotton crop by aerial spraying. Methyl parathion and dimethoate are organo phosphate insecticides used to control boll weevils and aphids. Penetrator Plus is a chemical added to the spray mixture to enhance the effect of the pesticides. "Super Boll," a foliar fertilizer, was also added to carry the chemicals to the crops. The fertilizer was manufactured by Abell Corporation. On July 22, 1992, the plaintiffs again applied Helena chemical products, including methyl parathion, "Karote" and "Penetrator Plus." During July 28 and 29, 1992, plaintiffs sprayed their crops with methyl parathion, "Penetrator Plus" and "Curacron," another organo phosphate, which was manufactured by Ciba-Geigy. Following the July 16, 1992 and the July 28-29, 1992 applications, the plaintiffs observed that the chemicals had burned their cotton plants. The plaintiffs filed suit, alleging that their crop had been damaged by application of defective chemicals produced by defendant chemical companies and sprayed by defendant crop-dusting company.[1]
After a trial, the jury answered 28 interrogatories and rendered a verdict finding that defendants Helena and Setre Chemical Companies were liable for plaintiffs' damages and that Michael Simpson was 50% at fault. Originally, the jury awarded plaintiffs $53,000 for the lost cotton crop yield. After a request by counsel, the trial judge questioned the jury foreman, who acknowledged that this award represented 50% of the total amount for lost yield determined by the jury. After the judge reminded jurors that they were not to reduce the damage award by the percentage of fault, the jury then doubled all of their original damage figures. Following the trial judge's explanation that the damage amounts relating to the redhibition claim would not be reduced by fault, the jury returned with an award of $106,000 for lost crop yield, $3,500 for return of the purchase price, $5,000 for expenses incurred by Michael Simpson and $20,500 for attorney fees. The trial court rendered judgment against Helena and in favor of plaintiffs for the sum of $61,500 and $20,500 in attorney fees.
Subsequently, the plaintiffs and Helena each filed motions for judgment notwithstanding the verdict. Finding that comparative fault is inapplicable to a redhibition claim, the trial court granted plaintiffs' motion and rendered judgment notwithstanding the verdict against Helena for the sum of $123,000, plus an additional $41,000 in attorney fees, thereby doubling the jury's awards for return of the purchase price, expenses and attorney fees. Helena appeals.

DISCUSSION
Helena argues the trial court erred in finding that the plaintiffs sustained a loss of crop yield. They contend that weather conditions and insects were responsible for any variation in the plaintiffs' annual cotton yield.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The allocation of fault is also a factual determination subject to the manifest error rule. Donavan v. Jones, 26,883 (La.App.2d Cir. 6/21/95), 658 So.2d 755.
In the present case, there was evidence that the plaintiffs' cotton crop was damaged by chemicals. Herschel Morris, the chemist for the Louisiana Department of Agriculture, testified that an analysis of a sample of methyl *841 parathion showed that the percentage of active ingredient exceeded the label rate. Dr. Rick Yager, the plaintiffs' expert in cotton production and crop damage adjusting, testified that he inspected the Simpson farms after they were sprayed with organo phosphate chemicals, including methyl parathion and dimethoate produced by defendants. Dr. Yager concluded that the damage to plaintiffs' cotton crop was caused by an organo phosphate chemical burn, as indicated by the condition of the plant leaves. He stated that the use of Penetrator Plus increased the severity of the chemical burn by stripping off the protective outer layer of the cotton leaves and allowing the organo phosphates to enter the plant cells.
Dr. Yager testified that the field comparison approach was a widely accepted method of calculating losses from reduced crop yields. The term, yield, refers to the pounds of cotton produced per acre. This method compares the difference between the yield produced by fields unaffected by some stress factor and the yield of affected fields. Although all of plaintiffs' fields were sprayed with chemicals, Field-5 was less severely burned because it was sprayed on the morning of July 29, 1992, after the pesticides were left suspended in water overnight. Dr. Yager explained that the process of hydrolysis could break down the pesticides and reduce their potency. As a result, Field-5 produced a higher yield than all of the other fields because it received less burn damage. Using the field comparison approach, Dr. Yager calculated that crop damage caused a loss of $41,942 at the Dupree-Simpson farm and a loss of $64,137 at the Joe-Dan Simpson farm, for a total loss of $106,079.
The jury also heard testimony disputing the idea that chemical damage caused the reduction in plaintiffs' crop yield. Dr. Hal Lewis, defendants' expert in cotton yield loss calculation, testified that crop yields naturally vary over time due to soil and weather conditions. He stated that 70% of the annual variation in plaintiffs' yields are attributable to the corresponding fluctuation in the Red River and Natchitoches Parish yields during the same time period. Dr. Lewis testified that in 1992, heavy rain in June followed by dry conditions in July probably stressed the plaintiffs' cotton plants and made them more sensitive to chemicals. He opined that the weather conditions and plant stress were more likely to have influenced cotton growth than did the July chemical spraying. Dr. Lewis attributed the remaining 30% of variation in plaintiffs' yields to such factors as insects, soil and seed type.
Mike Powell, a Helena product manager, testified that the methyl parathion and dimethoate labels direct that the chemicals be mixed with water. He asserted that plaintiffs' mixing of fertilizer and dimethoate was an "off-label" use that increased the extent of the chemical burn. Ken Maynard, a Helena representative who regularly visited plaintiffs' farms, testified that he did not know about plaintiffs' use of fertilizer with the first spraying, but acknowledged that it was a common practice by farmers in the area. Maynard stated that he had not seen such a severe chemical burn before and that he had expected a yield loss to occur as a result.
The jury heard the expert testimony and weighed the credibility of the witnesses. The parties offered competing assessments of the cause and extent of the crop damage and the resulting loss in yield. After reviewing the entire record, we cannot say that the jury was clearly wrong in finding that the plaintiffs sustained a loss in crop yield caused by the use and or mixture of Helena's chemicals. This assignment of error lacks merit.
Exclusion of Warranty Disclaimer Clause
The defendants argue the trial court erred in granting the plaintiffs' motion in limine to exclude from evidence the warranty disclaimer language contained in a credit sale agreement. The defendants contend that the contract clauses limit the plaintiffs' recovery to a return of the chemical purchase price. A trial judge's assessment of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. Laing v. American Honda Motor Co., Inc., 628 So.2d 196 (La.App. 2d Cir.1993), writ denied, 94-0375 (La.3/25/94), 635 So.2d 239. Here, the trial court found that the warranty disclaimer language in the credit sale agreements was virtually the same as the language appearing *842 on the product labels and contained in the chemical sale invoices, which had been admitted into evidence. The trial judge determined that the introduction of the credit contracts into evidence would be prejudicial and repetitive. We agree with this finding. Therefore, we conclude that the trial judge did not abuse his discretion in excluding from evidence the contract warranty disclaimers. The assigned error lacks merit.
Judgment Notwithstanding the Verdict
The defendants contend the trial court erred in granting the plaintiffs' motion for judgment notwithstanding the verdict ("n.o.v."). Defendants argue the damage award for lost crop yield should be reduced by the percentage of fault assessed to plaintiffs by the jury.
A motion for judgment n.o.v. is properly granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach a different conclusion. Taylor v. American Laundry Machinery, Inc., 27,121 (La.App.2d Cir. 6/23/95), 658 So.2d 288, writ denied, 95-1877 (La.11/3/95), 661 So.2d 1385. If the appellate court finds, after a review of the record, that reasonable minds could conclude as the jury did, the judgment n.o.v. must be set aside and the jury verdict reinstated. Finnie v. Vallee, 620 So.2d 897 (La. App. 4th Cir.), as amended, writ denied, 625 So.2d 1040 (La.1993).
In the present case, the jury found that the value of the cotton lost as a result of using the defective chemical was $106,000. In the original judgment, this amount was reduced to $53,000 to reflect the jury's allocation of 50% fault to plaintiffs. Subsequently, the trial judge granted plaintiffs' motion for judgment n.o.v. and increased the damage award to $106,000, finding that comparative negligence was inapplicable to plaintiffs' redhibition claim.
Redhibition is the avoidance of a sale because of some vice or defect in the thing sold which renders it either unfit for its intended use, or its use so inconvenient or imperfect that the buyer would not have purchased the thing had he known of the defect. LSA-C.C. Art. 2520. The seller who knows but omits to declare the vice of the thing he sells is answerable to the buyer not only for restitution of the purchase price and repayment of expenses, including reasonable attorney fees, but also for damages. LSA-C.C. Art. 2545; Hostetler v. W. Gray & Co., Inc., 523 So.2d 1359 (La.App. 2d Cir.1988). A manufacturer is presumed to know the defects in its products and thus is liable to the buyer for all damages caused by the defect under Article 2545. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981) (on rehearing); Rey v. Cuccia, 298 So.2d 840 (La.1974); Hostetler v. W. Gray & Co., Inc., supra.
The defendants argue the jury's award of $106,000 for crop yield loss reflects damages for negligence and should be reduced according to plaintiffs' fault. This distinction follows the form of the jury interrogatories, which set forth damages for the loss in cotton crop yield in a negligence category. Recovery of damages may be allowed under either the theory of tort or the theory of redhibition, or both, upon allegations and proof of sufficient facts. Albritton v. McDonald, 363 So.2d 925 (La.App. 2d Cir.1978); Harris v. Bardwell, 373 So.2d 777 (La.App. 2d Cir.1979).
In the present case, the evidence shows that the defendants' product was defective and that defendants' agent negligently approved, or failed to prevent, the use of Penetrator Plus together with two organo phosphate chemicals, resulting in damage to plaintiffs' crop. Although damages were recoverable under either the theory of tort or redhibition, here the jury was presented with interrogatories which placed the damage award for the lost cotton crop yield in a negligence category. The trial judge's instructions to the jury made the same distinction. Plaintiffs' counsel did not object to the submission of the damage award as a negligence claim to the jury, nor did he object to the judge's instructions. Thus, the plaintiffs acquiesced in this characterization of damages and, in effect, abandoned their redhibition claim as to the award for lost cotton crop yield.
*843 The evidence supports the jury's award of damages under a negligence theory. Consequently, the damage award is subject to reduction according to the percentage of plaintiffs' fault. LSA-C.C. Art. 2315. The jury's allocation to plaintiffs of 50% fault in causing the crop damage has not been appealed. After reviewing the record, we conclude the jury's findings are reasonable in light of the evidence and the manner of recovery designated in the interrogatory form. Therefore, the trial court erred in deciding that the plaintiffs' comparative negligence should not reduce the jury's damage award of $106,000 for lost crop yield. The amount of damages awarded for lost crop yield in the original judgment is reinstated.
The defendants also contend the trial court erred in doubling the jury's awards for return of purchase price, expenses and attorney fees. Where a defect in the product, although redhibitory, does not render the product absolutely useless, it is proper to consider the value of the benefit which the buyer has derived from use of the product. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978).
Here, the trial judge increased the awards for the purchase price, expenses and attorney fees, reasoning that the jury had reduced the amounts to conform with its determination of comparative negligence. However, the record contains evidence from which the jury could reasonably conclude that plaintiffs derived some benefit from use of the defective product. Although plaintiffs' crops were damaged by Helena's chemical, the jury may have awarded less than the full purchase price because use of defendants' product controlled the insects. We conclude that reasonable persons could have made the same decision as the jury in light of the evidence in the record. Therefore, the trial court erred in doubling the jury's awards for return of the purchase price, expenses and attorney fees. The jury's verdict is reinstated as to the amount of these awards.
Attorney Fees
The defendants argue the trial court erred in awarding attorney fees. They contend that plaintiffs failed to present any evidence on which to base such an award and are not entitled to attorney fees.
The award of attorney fees must be reasonable based upon the degree of skill and work involved in the case, the number of court appearances, the extent of discovery and the time spent in court. United Building Co. v. Harp, 25,852 (La.App.2d Cir. 6/22/94), 639 So.2d 349. In the present case, the jury awarded $20,500 in attorney fees to plaintiffs. The plaintiffs did not introduce any attorney billing records upon which a fee might be calculated. However, the record shows that this case involved extensive pretrial discovery. Plaintiffs' counsel presented several witnesses and prepared for the cross-examination of defendants' witnesses. Counsel participated in voir dire of prospective jurors and the trial required two days to complete. After considering the quantity of the work involved in this case as revealed by the record, we conclude that the jury did not abuse its discretion in awarding $20,500 in attorney fees. See Harris v. Bardwell, 373 So.2d 777 (La.App. 2d Cir.1979); Joseph v. Ford Motor Co., 499 So.2d 428 (La.App. 4th Cir.1986). The assigned error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment notwithstanding the verdict which awarded the plaintiffs $106,000 in damages for lost crop yield and which increased the amounts awarded by the jury to the plaintiffs for return of the purchase price, expenses and attorney fees is reversed. The damage award of $53,000 and the jury's awards of $3,500 for return of purchase price, $5,000 in expenses and $20,500 in attorney fees are reinstated. Costs of this appeal are assessed one-half to the appellants, Helena Chemical Company and Setre Chemical Company, and one-half to the appellees, Dupree-Simpson and Joe D. Simpson Farms.
REVERSED AND RENDERED.
HIGHTOWER, J., concurs with written reasons.
HIGHTOWER, Judge, concurring.
I strongly concur in all aspects of the opinion, save the award of attorney's fees.
*844 Plaintiffs presented this issue, the awarding of attorney's fees, to the jury but introduced no evidence whatsoever in that regard.
The case of Harris v. Bardwell, supra, is procedurally quite distinguishable from the present matter. To the extent that Joseph v. Ford Motor Co., supra, authorizes an appellate court to award attorney fees based upon factors not placed into evidence before the jury, the fact-trier to whom the issue has been submitted, I would decline to follow that rationale.
Furthermore, although such fees are recoverable here only as to the redhibition claim, nothing within the record demonstrates the amount of work plaintiffs' attorney devoted to the redhibition action alone. Yet, despite plaintiffs abandoning their redhibition claim for lost crop yield and recovering only $8,500 in redhibition, that recovery ultimately results in the attainment of a fee totaling $20,500.
NOTES
[1] The plaintiffs voluntarily dismissed their claims against the Abell and Ciba-Geigy corporations prior to trial. The jury, in its answers to interrogatories, found that Paul Foshee Dusting Company, Inc. and Paul Foshee, Jr. were not liable for plaintiffs' damages.