# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-291 consolidated with 05-292

**JOSEPH MATT, ET AL.**

**VERSUS**

**AGRO DISTRIBUTION, LLC, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 75540, DIV. A
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED. ADDITIONAL ATTORNEY'S FEES AWARDED ON APPEAL.**

> **Thomas G. Zentner, Jr.**
> **Nelson, Zentner, Sartor & Snellings**
> **Post Office Box 14420**
> **Monroe, LA 71207-4420**
> **(318) 388-4454**
> **COUNSEL FOR DEFENDANTS/APPELLANTS:**
> > **Land O'Lakes, Inc.**
> > **Agro Distribution, LLC**
> > **Agrilliance, LLC**

> **Edwin Dunahoe**
> **Dunahoe Law Firm**
> **Post Office Box 607**
> **Natchitoches, LA 71458-0607**
> **(318) 352-1999**
> **COUNSEL FOR PLAINTIFFS/APPELLEES:**
> > **Joseph Matt**
> > **April Matt**
> > **Debbie Howell**
> > **Lake Chicot Partnership**

AMY, Judge.

The plaintiffs sought damages related to what they allege was a deficient yield in their corn crop. A jury found in favor of the plaintiffs, awarding damages related to lost production, as well as damages for the plaintiffs' mental anguish and distress. The jury also awarded damages based upon the reconventional demand relating to repayment of an outstanding debt. The defendants appeal. The plaintiffs have answered the appeal, seeking among other things, attorney's fees for work performed on appeal. For the following reasons, we affirm the judgment of the trial court and award additional attorney's fees for work performed on appeal.

## Factual and Procedural Background

This consolidated matter relates to two individual claims for low corn crop yield.[1] Joseph Matt is the plaintiff in the first matter, along with his wife April Matt, his mother-in-law Debbie Howell, and their partnership, Lake Chicot Partnership (hereinafter referred to collectively as Joseph Matt). Joseph's brother, Derritt Matt, Jr. and his wife, Roxanne Matt (hereinafter Derritt Matt) are the plaintiffs in the consolidated matter.

Both plaintiffs are farmers. Trial testimony indicated that the plaintiffs were satisfied with their corn yield in 2001. According to the plaintiffs, they intended to order the same type of seed for their 2002 crop. Derritt and Joseph individually contacted Victor Cox, a salesman with Agro Distribution, LLC (Agro), and asked for the same type of corn seed they planted in 2001, a 115-118 day maturity seed. Mr. Cox confirmed these conversations and testified that he contacted Thomas Poole, then a Location Manager and Salesman for Agro, to "book" the corn seed for the plaintiffs.

---

[1]For decretal information in the companion case, *see Derritt Matt, Jr., et ux. v. Agro Distribution, LLC, et al.*, 05-292 (La.App. 3 Cir. 6/1/05), _ So.2d _.

After an initial order was delivered to the plaintifffs, Mr. Cox contacted them and informed them not to plant the seed. According to Mr. Cox, he was told that the seed delivered was not actually 115-118 day corn seed. This initial delivery was picked up and replaced with another variety.

Along with another variety of 115-118 day corn seed, the plaintiffs planted the new delivery of seed on their respective fields. Both plaintiffs testified that the corn initially grew as expected, but that it began to "tassel" in approximately fifty days. According to Mr. Cox, 115-118 day corn will usually tassel in seventy-five to eighty days and that after corn tassels, it begins to make an ear, "fill out the ear," and pollinate. Steven Schutz, an agricultural consultant qualified as an expert, testified that the later tasseling date of 115 day corn allowed time for the ears to more fully develop. He explained that the early tasseling date of the seed planted indicated that it had a 90-95 day maturity rate and would not be recommended for the area.

When informed of the early tasseling by the plaintiffs and another grower, Mr. Cox contacted Mr. Poole who, in turn, contacted Ed Boykin, a Cropland Genetics representative.[2] According to Mr. Cox, Mr. Boykin acknowledged the problem with the corn and instructed that the plaintiffs should take the corn to harvest.

Given these instructions, the plaintiffs raised the corn to term and harvested it, as they did the remainder of the crop. The remaining portion of the crop, raised from different seed, did not prematurely tassel. The plaintiffs reported a reduced per acre yield from the year before. Although the plaintiffs were able to pay off the bulk of their outstanding debt related to the 2002 year, they were each unable to extinguish their debt to Agro.

---

[2] Mr. Boykin explained that Cropland Genetics is owned by Land O' Lakes.

The plaintiffs filed their respective petitions in this matter, seeking damages related to the reduced yields. Agro Distribution, LLC, Agriliance, LLC, and Land O' Lakes, Inc. were named as defendants. A cross-claim was filed against the plaintiffs, seeking outstanding balances on the products purchased from the defendants.

A jury found in favor of the plaintiffs, concluding that the "corn seed failed to possess a quality which it was represented by defendants to plaintiffs to possess[]" and that damages resulted from this failure. The jury awarded damages as follows to Derritt and Roxanne Matt: 1) Cost of corn seed, $2,847.50; 2) Lost corn crop production, $81,000.00; 3) Inability to secure a crop loan for the 2003 crop year, $30,000.00; 4) Mental anguish, anxiety and distress, individual awards of $25,000.00 each to Derritt and Roxanne; and 5) Attorney's fees, $55,000.00. The jury awarded damages as follows to Joseph Matt, April Matt, Debbie Howell, and Lake Chicot Partnership: 1) Cost of corn seed, $3,685.00; 2) Lost corn crop production, $123,000.00; 3) Inability to secure a crop loan for the 2003 crop year, $45,000.00; 4) Mental anguish, anxiety and distress, individual awards of $25,000.00 each to Joseph Matt, April Matt, and Debbie Howell; and 5) Attorney's fees, $71,000.00.

The jury also found in favor of Agro Distribution, LLC in its reconventional demand against the plaintiffs. The jury awarded Agro $35,500.00 in its claim against Derritt and Roxanne Matt and $85,500.00 in its claim against Lake Chicot Partnership.

The trial court separately ruled on the interest due on the reconventional demand, finding that the legal interest rate of twelve percent was applicable rather than the eighteen percent sought by the defendants. Subsequent to this ruling, the defendants filed an exception of no cause of action, asserting that the plaintiffs had

3

no cause of action for the nonpecuniary awards made by the jury. The trial court denied the exception, finding it untimely. Finally, the trial court denied the defendants' motions for new trial, judgment notwithstanding the verdict, and remittitur.

The defendants appeal and present the following assignments of error:

1. The jury in this matter erred in awarding damages to plaintiffs. Alternatively, the jury award was excessive.

2. The jury erred in its failure to award full damages to defendants/plaintiffs-in-reconvention.

3. The Trial Court erred in awarding only the twelve (12%) per cent conventional rate of interest as opposed to a percentage rate of eighteen (18%) percent as stated in the contract between the parties.

4. The Trial Court erred in denying Appellants' Exception of No Cause of Action.

5. The Trial Court erred in its denial of the Motion for New Trial, Judgment Notwithstanding the Verdict and Motion for Remittitur on behalf of defendants/appellants.

6. The jury erred in awarding damages for plaintiffs' inability to secure crop loans for the 2003 farm year.

The plaintiffs answered the appeal, questioning the trial court's exclusion of evidence regarding expenses incurred in the cultivation of the corn and the jury's determination that the defendants established the claim in reconvention with sufficient proof. Finally, the plaintiffs seek an increase in attorney's fees for work performed on appeal.

**Discussion**

*Damages for Lost Crop Production*

The defendants first question the awards to the plaintiffs for lost corn crop production. They assert that "[t]he clear error for this award lies in the fact that

4

plaintiffs failed to illustrate the exact production for the alleged defective corn seed variety." In particular, the defendants point to Derritt's statement that he harvested the allegedly defective corn separately from that which grew from other seed and as expected, but that the two corn types were not stored or sold separately. The defendants assert that: "At the time that this decision was made by plaintiffs, they knew they had a problem with their yield, knew they were going to pursue a claim, and yet, chose not to separate the yields in order to prove their claim."

First, the record supports a determination that the corn seed was defective insofar as the plaintiffs expected 115-118 day seed and the seed delivered tasseled prematurely. Rather, this assignment addresses the method used by the plaintiffs to establish that lost yield. The jury's determination as to the evidence presented with regard to the appropriate measure is factual in nature. A jury's factual determinations are subject to the manifest error standard of review and will not be reversed unless clearly wrong. *See Guillory v. Ins. Co. of North America*, 96-1084 (La. 4/8/97), 692 So.2d 1029. Our review reveals no manifest error in the jury's determination that the plaintiffs sufficiently quantified that loss so as to prove damages.

Both plaintiffs testified as to their harvesting methods and explained that it was not their practice to separate the harvests of the individual varieties planted. Both Derritt and Joseph denied that they were told by the defendants to separate the allegedly defective corn seed from the other varieties. Derritt stated that doing so was not a standard farming practice. Rather, Derritt and Joseph testified that they were told to merely collect their three-year average yield. Mr. Cox confirmed this request. The record indicates that both Derritt and Joseph's three-year average yield was 130 bushels of corn per acre. Derritt's 2002 average yield was 71 bushels per acre,

5

whereas Joseph's 2002 average yield was 68 bushels per acre. The jury was free to conclude that this reduced yield was due to the defective seed as the remaining harvest was from 115-118 day seed which was the same as had been planted the year before and which developed as expected.

Insofar as the defendants assert that plaintiffs were aware of the controversy and that they failed to separate the corn to preserve their evidence, two facts bear mentioning. First, the plaintiffs testified that they did as instructed by Agro personnel and that they were told they would "settle up" at the end of the year. Further, had the plaintiffs separated the corn before it was sold, the three year average would have been unhelpful as an average to measurement since the three year harvest was also based on the sale of a harvest of more than one variety. There would have been no measure of how this particular seed had performed in years past.

As the record supports the jury's decision, this assignment lacks merit.

*Failure to Secure Crop Loans*

The defendants next question the award made for the plaintiffs' inability to obtain crop loans for the 2003 crop. The defendants contend that although the outstanding debt owed Agro by each of the plaintiffs was provided as a basis for the refusal of the crop loan, the Agro loan was a relatively small percentage of their overall indebtedness.

Although the record indicates that the plaintiffs each had outstanding debt, the record supports a determination that it was the outstanding Agro debt that was responsible for the bank's refusal to extend the 2003 loan. Layne Parnell, the plaintiffs' banker since 1998, testified that his responsibilities at Ouachita Independent Bank involved agricultural loans. He stated that the bank could not

6

extend 2003 loans to the plaintiffs until they resolved the Agro matter. Furthermore, a letter addressed to Lake Chicot Partnership and authored by Mr. Parnell, states that: "In order to proceed with the approval process of your 2003 farm-operating loan, the disputed debt that you have with AGRO must be resolved. OIB or FSA cannot give you final approval until such time as it is resolved. If this is not resolved then OIB will be unable to provide financing for you in 2003." Finally, Mr. Layne testified as to both plaintiffs' financial situations, including their assets and their liabilities, and confirmed that, absent the "problem with Agro," he would have been able to get each plaintiff approved for the loan.

Given Mr. Layne's testimony regarding the importance of the Agro debt in the denial of the loan, the jury's determination is not manifestly erroneous. This assignment lacks merit.

*General Damages*

The defendants next question the fact that general damages were awarded and that they were awarded not only to Joseph and Derritt Matt, but to Roxanne Matt, April Matt, and Debbie Howell as well. The defendants contend that since Joseph and Derritt were the only plaintiffs who "actually farmed the acreage in 2002," they should be the only plaintiffs awarded general damages. The defendants stated that "farming, like many other endeavors, is a risky venture, and no doubt, farmers across our state are filled with worry and anxiety each season. Therefore, 2002 was no different for the Matts other than the fact that they did indeed sustain a reduction in yield." The defendants do not specifically question the quantum awarded for mental anguish, anxiety, and distress. As explained below, the defendants' questioning of

7

the appropriateness of the general damages award in light of the theories of recovery pled, was not timely made through their exception of no cause of action.

As for the argument raised in the defendants' brief regarding the applicability of general damages to each of the plaintiffs, we find that the record supports the jury's factual determination that each of the plaintiffs suffered "mental anguish, anxiety, and distress" related to the crop failure and the inability to secure crop loans. Although Derritt and Joseph were the only two plaintiffs to physically farm, each plaintiff was liable for the debt associated with the 2002 and 2003 crop. As the 2003 farm-operating loan was denied by the bank, the plaintiffs' property was mortgaged and sizeable sums were obtained through credit card financing. These plaintiffs testified as to increased stress, irritability, and short tempers during the period. Furthermore, because the Agro debt remained outstanding at the time of trial, testimony indicated that similar financing was to be required for the 2004 crop. Accordingly, the record supports the determination that each of the plaintiffs suffered from mental anguish, anxiety, and distress due to the low yield crop.

This assignment lacks merit.

*Attorney's Fees*

The defendants next question the separate attorney's fees awards made to the plaintiffs. The defendants contend that: "The cases were consolidated, and tried at one time over the course of approximately four (4) days. Defendants would suggest a total reasonable attorney fee in the range of $30,000-$50,000."

In *State, DOTD v. Williamson*, 597 So.2d 439, 442 (La.1992), the Louisiana Supreme Court explained that factors to be considered in determining the reasonableness of attorney's fees include:

8

(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

Having reviewed the record in light of the above factors, we conclude that the attorney's fees awards were not excessive so as to require reduction.

First, counsel for the plaintiffs recovered sizeable judgments. Notwithstanding the attorney's fees, the plaintiffs in the Derritt Matt action recovered a total of $163,847.50 and the plaintiffs in the Joseph Matt action recovered a total of $246,685.00. The attorney's fees awarded are equivalent to roughly one-third of the figure recovered. The record indicates that the trial on the matter lasted four days and that numerous witnesses were questioned, expert witnesses were obtained, and various pieces of evidence were entered into the record. The level of skill demonstrated by the plaintiffs' attorney is apparent from the content of the record and in the judgment obtained. In short, the record reveals no abuse of discretion in the jury's award in this regard.

This assignment lacks merit.

*Exception of No Cause of Action*

Subsequent to the jury's verdict, the defendants filed an exception of no cause of action, asserting that the awards for nonpecuniary damages must be reversed. The exception was denied as untimely by the trial court. The defendants again argue that the exception should have been maintained as the plaintiffs' claim was one in redhibition and that only damages for economic loss are available.

Louisiana Code of Civil Procedure Article 928(B) provides: "The peremptory exception may be pleaded at any stage of the proceeding in the trial court *prior to a*

9

*submission of the case for a decision . . . ."* (Emphasis added.) In this case, the exception was not filed until after the jury's determination of the matter. Accordingly, the trial court's finding of untimeliness was not in error. As the trial court's ruling was on the procedural aspect of the exception, and this ruling was correct, the merits of the exception are not before this court.

*Reconventional Demand*

At trial, Agro sought a judgment reflecting the outstanding principle of the outstanding debt it contends was owed by the plaintiffs. In response to a question from the jury, a stipulation was entered indicating that "the principle [sic] amounts of Agro's claims" was $71,683.00 on the Derritt Matt loan and $171,073.42 on the Joseph Matt/Lake Chicot Partnership loan.[3] After this stipulation, the jury entered judgment against Derritt in the amount of $35,500.00 and against the Lake Chicot Partnership in the amount of $85,500.00. The defendants question the jury's failure to award the entire amount sought and contend that, given the stipulation, there was no basis in the record for the reduced amount.

In their answer to the appeal, the plaintiffs question whether *any* award for the reconventional demand was appropriate. The plaintiffs contend that the defendants failed to present evidence in the form of invoices, receipts, or testimony that would

---

[3] The trial court advised the jury of the stipulation as follows:

> [P]ursuant to the jury's request for what they call seed receipts, "Purchase Invoices," for Agro, for D. Matt, and J. Matt, I'm sending them Plaintiff's Exhibit, P-1 and P-2. Uh, for their verbal request when they were here as to the amount of Agro's claims against plaintiffs. The attorneys have agreed that rather than bring the jury back down, I would send them a note written by myself, that uh . . . it's dated today, has the time of 7:15 p.m. when I wrote it. And reads as follow[s]: 'To the jury, the attorneys have stipulated that Mr. Kevin Connor testified that the principle amounts of Agro's claims are as follows: Derritt Matt ($71,683.30), Lake Chico [sic] Partnership ($171,073.42).' Signed by me.

Upon the trial court's questioning of the parties' attorneys, both denied that there was an objection to the statement. The written version of the stipulation is contained in the record.

10

affirmatively establish the cross-claim. The plaintiffs also point out that although the stipulation set forth the principal amount of Agro's claim against them, it did not include a stipulation that the figures were owed or that a representative of the defendants testified as to the figures.

As pointed out by the plaintiffs, the defendants have the burden of proof insofar as their reconventional demand is concerned. The plaintiffs assert that the defendants failed in their burden of proving the existence of an "open account," *see Hurley State Bank v. Pickens*, 03-911 (La.App. 3 Cir. 12/10/03), 861 So.2d 846. However, the existence of such an account does not appear to have been particularly questioned at trial. Rather, it was whether that debt was owed. What was established, in part by testimony from the plaintiffs themselves, is that an outstanding debt remains from the purchase of products from Agro. Derritt affirmed in his testimony that a principal balance of approximately $72,000.00 remained. Similarly, Joseph testified that he was able to pay his outstanding debt associated with the 2002 year, except for that on the Agro account. As argued by the plaintiffs in their case in chief, the outstanding debt prevented both from obtaining a bank loan for their 2003. Due to this unresolved issue, neither plaintiff attempted to obtain a loan for the 2004 year. Furthermore, Kevin Conrad, a representative of Land O' Lakes who handles the company's agronomy and field claims, explained that his review of the invoices indicated that Derritt Matt's outstanding balance with was $71,683.30 and that Joseph/Lake Chicot Partnership's balance was $171,073.42. Although this testimony is limited, it establishes that the plaintiffs had outstanding balances on their accounts. Both plaintiffs acknowledged that these balances were outstanding. Absent any indication to the contrary, the jury was entitled to consider the admissions of the

11

plaintiffs regarding the existence of the debt and conclude that at least a portion of that debt was owed.

However, we find no merit in the defendants' assertion that, given the stipulation, the jury erred in failing to award the full amount sought. Reference to the stipulation indicates that it related only to the amount of the claim, not the amount actually owed. The record contains ample evidence to explain the jury's reduction of the amount it found actually owed of the debt. For example, the jury was aware that only a portion of the debt related to the defective corn seed as the plaintiffs farmed the more profitable corn seed as well as other crops. The jury also heard testimony regarding Agro's profit margin on the products sold, oftentimes a 100% increase. Further, recall that the jury made separate awards for the purchase price of the defective corn seed. In short, it is difficult to know what evidence or elements were considered in the jury's determination that the amount actually owed to Agro was approximately half of that claimed. What is clear is that the record supports an award for the outstanding debt given the plaintiffs' admission. However, the record also provides sufficient evidence of numerous factors justifying a determination that the amount owed was significantly less than that claimed by the defendants.

This assignment lacks merit.

*Interest Rate for Reconventional Demand*

In their final assignment of error, the defendants contend that the trial court erred in deciding that the legal interest rate of twelve percent was applicable to the reconventional demand rather than the eighteen percent it asserts that the plaintiffs contracted for.

In considering the interest issue, the trial court concluded that the defendants failed to specifically plead that the eighteen percent interest rate was sought. Reference to the cross-claim indicates that the defendants summarily stated that outstanding balances were owed. The pleading was without reference to the eighteen percent interest rate or even to the existence of the Agro account. Given its general nature, and La.Code Civ.P. art. 861's requirement that special damages be specifically alleged, we find no error in the trial court's ruling that the pleading was insufficient to permit recovery.

This assignment lacks merit.

*Costs Attributable to Corn Harvest*

In their answer to the appeal, the plaintiffs seek an additional award for costs encountered in bringing the corn seed to harvest. The plaintiffs note that, while testimony was presented as to these costs, the trial court denied their request to create a specific line damage award element for their recovery. The plaintiffs contend that this denial was erroneous pursuant to that portion of La.Civ.Code art. 2545 which provides that a buyer is entitled to recover "reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing . . . ."

In denying the plaintiffs' request for a separate line item for recovery of costs attributable to the harvest, the trial court explained: "I've read the article and my impression that . . . in an agricultural situation as we have here that the article does not intend that a plaintiff can recover [], both the money that they invest in the crop, in producing the crop [], as well as their lost profits." After review of La.Civ.Code art. 2545, we find no error in this ruling. The expenses sought in this case were not ones to "preserve a thing," but rather were expended to bring the crop to harvest.

13

There is no evidence to suggest that these expenses were beyond those that would have been incurred if the seed had been as desired.

Although the plaintiffs advance *Dupree-Simpson Farms v. Helena Chemical Co.*, 28-739 (La.App. 2 Cir. 10/30/96), 682 So.2d 838, for the proposition that both damages for a lost yield and for expenses can be recovered, there is no indication in the second circuit's opinion as to what the expenses were. Neither does it appear that the issue now before this court, *i.e.*, whether recovery can be had for both lost profits and for expenses of raising the crop, was placed before the court in that case. Accordingly, we do not find the cited case persuasive on this issue.

This assignment lacks merit.

*Attorney's Fees on Appeal*

Finally, the plaintiffs seek an increase in attorney's fees due to work performed on appeal. As the plaintiffs have successfully defended the appeal, have incurred additional expenses associated with the appeal, and have sought the increase in damages in accordance with proper appellate procedures, we find such an increase appropriate. *See Riser v. Acadiana Limousine* Service, 96-1687 (La.App. 3 Cir. 4/30/97), 693 So.2d 330, *writ denied*, 97-1420 (La. 9/19/97), 701 So.2d 173; *Stacks v. Mayflower Transit, Inc.*, 95-693 (La.App. 3 Cir. 11/2/95), 664 So.2d 566. Accordingly, we find an increase in the award of attorney's fees in the amount of $6,000.00 warranted for work performed on appeal.

## DECREE

For the foregoing reasons, the judgment in this consolidated matter is affirmed. As explained above, a single $6,000.00 award is made to the plaintiffs for attorney's

14

fees on the appeal of this consolidated matter.  All costs of this appeal are assigned to the appellants, Land O' Lakes, Agro Distribution, LLC and Agrilliance, LLC.

**AFFIRMED.  ADDITIONAL ATTORNEY'S FEES AWARDED ON APPEAL.**